31 So.2d 366

**ALABAMA GREAT SOUTHERN R. CO. v. BAUM.**

**6 Div. 485.**

Supreme Court of Alabama.

June 19, 1947.

Rehearing Denied July 31, 1947.

444

Benners, Burr, Stokely & McKamy and Robert Greye Tate, all of Birmingham, for appellant.

Taylor, Higgins, Koenig & Windham, of Birmingham, for appellee.

445

against the Alabama Great Southern Railroad Company to recover damages for personal injuries alleged to have been suffered by him while he was in the employ of the defendant, engaged in the line of duty in handling interstate commerce.

The cause was tried on a single count, to which defendant's demurrer was overruled, and pleas of not guilty and contributory negligence in mitigation of damages.

There was verdict and judgment for the plaintiff in the sum of $12,000, from which defendant appealed.

It was without dispute that the appellant was a common carrier by railroad and that both appellant and appellee were engaged in interstate commerce at the time of the injury. It was also without dispute that appellee was engaged in the performance of his duties in such interstate commerce when injured.

The appellee sustained his injuries in attempting to alight from a locomotive at Akron, Alabama, at about 12:30 A.M. on December 15, 1944. The weather at the time was clear and cold, below freezing. Appellee attempted to alight from the locomotive while it was in motion to pick up orders. He started down the steps of the locomotive, which steps were dark, by backing down in the usual way. Appellee's theory was that ice had formed on the last or bottom step which caused him to slip and fall: that the ice formed on the step because of a defective or insufficient foot warmer pipe, or a cylinder head, both of which leaked steam which was blown to said step and froze thereon.

Appellee testified: "I got to the bottom step; I had let my left foot descend from the step to touch the ground and as it was supposed to touch the ground to loose the right foot and catch my balance just as I had done that. My right foot went off of that step and both hit the ground at the same time, which threw me around to the engine, but I still had hold of the grab-irons, and right in that particular place there is a small elevation. God knows if I had turned loose there, I would have went under there. I held to the grab-irons and I pushed myself away from the engine and fell, and that is when I got hurt." Appellee further testified

LIVINGSTON, Justice.

H. M. Baum brought suit in the court below under the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51 et seq.,

that it was his right foot that slipped off. He did not know that there was any ice on the bottom step. He had not been down those steps previously. He fell headlong to the engine and face forward. The left side of his body hit the ground first. He don't know exactly what happened, but when he came to himself he was sitting on a little motor car and his arm was paining him so severely he got up and walked into the operator's office and told the operator he wanted a doctor, that he was hurt.

■ The single count on which the cause was tried, charges that appellee's injuries were proximately caused "by reason of a defect or insufficiency, due to the negligence of the defendant in its engine, appliances, or machinery, proximately causing plaintiff to slip on said step and to be thrown to the ground, thereby proximately causing his aforesaid injuries and consequent damages."

Appellant's attack on count 2, the count on which the case was tried, is premised on appellee's failure to allege the manner of the defect or insufficiency, and that appellant had knowledge or notice of said defect or insufficiency.

The pertinent parts of section 51, title 45 U.S.C.A., is as follows: "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from * * * or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery", etc.

The above-quoted part of count 2 is in almost the identical language of the statute.

In Southern Railway v. Peters, 194 Ala. 94, 97, 69 So. 611, 613, it was held: "The complaint in this case sufficiently sets up a cause of action under the federal Employers' Act. It sets forth every condition under which liability arises, and sets this forth substantially in the language of the statute. 35 Stat.L. 65, Fed.Statutes Annotated, Sup. 1909, p. 584. This is all that is required of the complaint. Grand Trunk Western R. Co. v. Lindsay, 233 U.S. 42, 34 S.Ct. 581,

58 L.Ed. 838, Ann.Cas.1914C, 168; Seaboard Air Line R. Co. v. Duvall, 225 U.S. 477, 32 S.Ct. 790, 56 L.Ed. 1171; Atlantic Coast Line R. Co. v. Jones, 9 Ala.App. 499, 63 So. [693], 696. See, also, Id. [12 Ala. App. 419], 67 So. 632. The complaint was not subject to the defendant's demurrer." See, also, McDonnell v. Murnan Shipbuilding Corp., 210 Ala. 611, 98 So. 887.

Count 2 stated a cause of action under section 51, supra.

■ Appellant's refused charges 18, C, 16 and 20, premised on lack of notice or knowledge of the ice on the step were for the foregoing reasons properly refused.

Appellant's refused charge 19 is as follows: "I charge you that if you are reasonably satisfied from the evidence in this case that plaintiff descended the steps of the locomotive without exercising ordinary care for his own safety, and you are further not satisfied that defendant, its agents, or servants, were negligent, then you cannot return a verdict for the plaintiff."

■ Contributory negligence is no defense in this case. If appellee was guilty of contributory negligence, that fact only mitigates the damages. Charge 19 is misleading and confusing. It tended to authorize the jury to consider contributory negligence on the part of appellee as a bar to recovery.

■ Appellant's refused charge 7 is invasive of the province of the jury, and was properly refused. See, Thaggard v. Vafes, 218 Ala. 609, 119 So. 647.

■ Charge 13, if a correct instruction, which we need not decide, was covered in appellant's given charge 15, and the trial court did not err to a reversal in refusing it.

■ Assignments of error 10 and 11 are premised on the refusal of the general affirmative charge for appellant hypothecated on a belief of the evidence.

Appellant offered no testimony. The evidence on behalf of appellee showed without contradiction that the "cylinder head on right side leaking bad" (engineer's report); that the cylinder in question was in front of the steps from which the plaintiff slipped and fell; that the steam leaking

from the cylinder head went right back against the tender and over the step; that the foot warmer exhaust was also leaking steam at a point just in front of the steps; that there was ice on the step; and that because of the ice, plaintiff slipped and fell as he was in the act of getting off the engine in and about the performance of his duties. That there were these defects in the engine, is without dispute. That the steam escaping from the defective parts of the engine passed over and settled on the ·step, is without dispute. That under the climatic conditions shown, the steam in question froze and formed ice on the step cannot be doubted. That plaintiff slipped because of the ice, and was painfully and permanently injured, cannot be questioned. Contributory negligence of the plaintiff, if any, is not a bar to the suit, but may be considered only in mitigation of damages.

The general charge, or general charges, were properly refused.

Assignments of error 12 and 13 were predicated upon the trial court's action in overruling appellant's objection to the following question and motion to exclude the answer thereto: "Q. He (appellee) cubbed to be a brakeman? A. No sir."

The undisputed evidence shows that appellee's regular employment with the defendant was that of a locomotive fireman, but that on the occasion in question he was performing the duties of brakeman, the positions involving different duties. Contributory negligence was an issue. The same act might be negligence as to a brakeman and not as to a fireman, and vice versa. The evidence was competent. Appellant's assignment 14, based on the trial court's refusal to declare a mistrial on account of the foregoing question and answer is without merit.

### Assignment of error 15.

In connection with the testimony of one Nichols, a flagman, a report made by the engineer Farmer at the end of the run, and showing that the right cylinder head was "leaking (steam) bad," was, over appellant's objection, admitted in evidence. The preliminary proof as to the report of the condition of the cylinder head and the like, was by the flagman who testified he saw the report made, was familiar with the facts, and knew and identified the handwriting of the engineer who wrote out the report, and that such report was made in the usual course of business. Under these circumstances, we conclude the evidence forming the basis of assignment of error 15 was not improperly admitted. Section 415, Title 7, Code of 1940. Moreover, the engineer who wrote and made out the report took the stand and identified the report in every respect, and confirmed the testimony of the flagman in regard thereto, and the truth of the facts therein contained: all of which was without dispute. No reversible error here appears.

### Assignment of error 16.

The trial court sustained appellee's objection to the following question propounded to Mr. Farmer, the engineer, by appellant: "Q. Was there any defect in your steps, Mr. Farmer?"

What counsel for defendant was attempting to prove by this question is not entirely clear. If he was attempting to prove that there was no structural or mechanical defect in the steps, this fact was not an issue in the case, and, in addition there was no error prejudicial to the defendant in sustaining the objection since that fact was brought out without objection by the next two questions propounded to and answered by the witness as follows:

"Q. Now, Mr. Farmer, was there any structural or mechanical defect in the steps? A. None that I saw.

"Q. None that you saw? A. When I examined them."

If, on the other hand, the purpose of counsel for defendant was to elicit an answer as to whether or not the step was defective because it had ice on it, the court very properly sustained objection to it. If this was the purpose of the question, then it called for a conclusion on the part of the witness, and also was invasive of the province of the jury. That the trial judge so considered the question is disclosed by the following language used by him in ruling on the question: "I think that is what the law suit is about. * * *

And for this gentleman to pass on the law suit—I think the form of it would be improper, but that doesn't mean the court shuts you off from bringing out the facts. Just show the facts, and let the jury say whether there was a defect in the thing."

In our opinion there is no error.

Assignments of error 17 and 18.

We quote from appellant's brief:

"Appellee's counsel, Mr. Taylor, in his closing argument to the jury said 'When you meet this good man on the street'. Objection to the argument was made by appellant. The trial court said, 'I don't see that is poison,' and upon insistence for a ruling overruled the objection. Appellee's counsel then said:

" 'I will ask of my own motion to exclude it if he (referring to appellant's counsel) says any more about it.'

"This argument served to intimidate the jury, in that sometime they would meet appellee upon the street, and would presumably have to explain their verdict. The court made the matter more emphatic when he categorically stated 'I don't see that is poison.' Mr. Taylor himself in his remark recognized more quickly its harmful effect, and reflecting upon appellant's counsel for objecting to it threatened to withdraw the remark if any more was said about it."

The record discloses the following:

"Mr. Tate: Just a minute. We object to that argument that 'When they meet this good man on the street,' we object to that.

"Mr. Taylor: That is all, gentlemen, thank you.

"Mr. Tate: We object to it as not based upon any facts in evidence.

"The court: You just think that is calculated to poison the minds of the jury?

"Mr. Tate: Yes, sir.

"The Court: I don't know that it is.

"Mr. Tate: Well, we object to it on the ground that it is, and if Your Honor will overrule the objection. The part we object to is the part in which Mr. Taylor addressed the jury and related 'When you meet this good man on the street.'

"The Court: Well, if that is all he said, I don't see that is poison.

"Mr. Tate: Well, does Your Honor overrule the objection?

"The Court: I am overruling the objection to that part, 'When you meet this man on the street,' as not calculated to  *  *  *

"Mr. Taylor: Well, Your Honor—

"The Court:—as not—

"Mr. Taylor: I will ask of my own motion to exclude it if he says any more about it—

"Mr. Tate: No.

"Mr. Taylor:—and they may never meet the man again; they may never see him. I will ask the court—

"The Court: There is no evidence of that.

"Mr. Tate: No, sir; not that they will. If the court please, I want to object to Mr. Taylor making the argument, and then, when I am trying to get the court to withdraw it—to get the court's action on it, Mr. Taylor withdraws the argument itself. Now, I move Your Honor to declare a mistrial on account of the prejudicial argument that Mr. Taylor made, in that it intimidates the jury 'when they meet this man on the street.'

"The Court: Let me have it—

"Mr. Tate: Yes, sir.

"The Court: Now, gentlemen of the jury, the Supreme Court has laid down as one of the highest duties that the judge has got to perform is to see that we have a fair trial, and they said if any poisonous remarks or prejudicial remarks calculated to prejudice or poison you, that is of that nature, that they call ineradicable, it is my duty to take this case away from you and not to let you sit on it; that is what the Supreme Court calls ineradicable poison. Now, if it is not of that character and of that nature. but is eradicable; in other words, by my—the court calling attention to the fact that you eliminate it from your minds, to disregard it and pay no attention to it, and it can be eradicated, then it is my duty to do that and to say as much to you, and this court doesn't believe that you twelve men, who are under oath, will disregard your oath and bring an improper verdict in here, because you are swayed by prejudice at all, but you will do what you swore you would do,—you would try the

case according to the law and the evidence, —and that being true the court does not feel like taking the case away from you at this time and make a mistrial of it, because with. that admonition of the court, I don't think you will go out and disregard your oath, and I, therefore, hold the remark as made that 'when you meet him subsequently on the street,' I don't think that that is per se calculated to poison or prejudice your minds, and the motion for mistrial for those remarks is overruled,—

"Mr. Tate: Well, we except.

"The Court:—with that admonition.

"Mr. Tate: We except."

The record does not disclose just what preceded or followed the expression "when they meet this good man on the street." We are unable to conceive of any harmful effect of these words standing alone, and cannot reverse because of the trial court's action in reference thereto as shown by the record.

We have carefully considered all the evidence touching appellee's injury. That it is permanent and severe is beyond question. The undisputed medical testimony is to the effect that appellee has a sixty to sixty-five per cent loss of function to left arm and shoulder, and that the injury is permanent. In cases of this character, even the trial court will not set aside the verdict of the jury merely because, in its opinion, the jury gave too much or too little; and when the trial court has refused to disturb a verdict on account of the amount recovered, the appellate court is very reluctant to substitute its judgment for that of the jury and the court below. We will not do so unless the amount is so excessive, or so grossly inadequate, as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury. Florence Hotel Co. v. Bumpas, 194 Ala. 69, 69 So. 566, Ann.Cas.1918E, 252; Central of Georgia R. Co. v. White, 175 Ala. 60, 56 So. 574.

We will not disturb the verdict here. The cause is due to be affirmed, and it is so ordered.

Affirmed.

GARDNER, C. J., and BROWN and SIMPSON, JJ., concur.