160 So.2d 869

**ATLANTIC COAST LINE RAILROAD CO.**

v.

**Daniel E. KINES.**

**ATLANTIC COAST LINE RAILROAD CO.**

v.

**Ethel KINES.**

6 Div. 600, 601.

Supreme Court of Alabama.

Oct. 17, 1963.   .

Rehearing Denied Feb. 27, 1964.

254

Peyton D. Bibb and Graham, Bibb, Wingo & Foster, Birmingham, for appellant.

Hare, Wynn & Newell and Bibb Allen, Birmingham, for appellees.

COLEMAN, Justice.

This is an appeal by one of three defendants from judgments for plaintiffs in two consolidated actions for personal injury to a woman who was riding as a passenger in an automobile when it collided with a train operated by appellant.

The injured woman is plaintiff in one action and her husband is plaintiff in the other. Except on the issue of excessiveness of verdict and the elements of damage, we see no difference between the two appeals as to the errors insisted on. For brevity, and perhaps for easier understanding of the points considered, we will write to the wife's case and refer to her as plaintiff.

The plaintiff brought action against three defendants, namely; the appellant corporation, which is the master or employer who operated the train; Walter H. O'Neal, the engineer employed by appellant to operate the engine; and B. Bartlett, employed by appellant as conductor.

The jury returned verdict for $87,500.00, against appellant and for the engineer and conductor. Judgment was rendered accordingly. Appellant's motion for new trial was overruled.

Collision occurred near the hour of midnight at a grade crossing of Avenue V by appellant's track in Birmingham. The crossing appears to be at right angles. The train approached from the west and the automobile from the north.

The defendant engineer was in charge of the engine. He was on the right or south side of the engine. The fireman, Derico, who was not made a defendant in the action, was in the fireman's seat on the left or north side of the engine. The brakeman, Long, who also was not made a defendant, was between the fireman and the engineer. Appellant summarizes some of the evidence as follows:

"Fireman Derico was keeping a lookout ahead and to the left on his side (R. 461). When he first saw the lights of the automobile, approaching the crossing from his side, the front of the locomotive was near the crossing and at a point which he later stepped off as 14 steps (3 feet to the step) from the near, or west, edge of Avenue V (R. 435). The automobile was then (when its lights were first seen) at a point up by the house shown on the diagram just north of the crossing and about the street turn-off from Avenue V, and which point he later stepped off as 142 feet from the track (R. 435, 455, 472). When he first saw the lights of the auto he could not tell how fast it was going (R. 455) or whether or not it was slowing down (R. 435). When the auto came on further into his view and to about halfway from where it was when he first saw it, he could then tell that the auto did not appear to be slowing down and he immediately hollered to the engineer (R. 436, 457) who immediately put the brakes in emergency. When Fireman Derico hollered to Engineer O'Neal the front of the engine was four steps from the near curb of Avenue V (R. 436, 438) and Engineer O'Neal was already blowing a blast of the whistle and continued to blow the whistle as the engine passed over the crossing (R. 440, 463). There was nothing else the engineer could have done to stop the train any quicker (R. 461) and it was impossible for it to be stopped before reaching the street. (R. 457)

"The auto did not stop and it hit the engine right under where Fireman Derico was sitting on the left side of the engine cab, (R. 437) which was right above the left front trucks of the engine. As fireman he had nothing to do with the brakes, the whistle or the bell (R. 510)."

The engineer never saw the automobile before the collision. There is evidence to support the conclusion that the left front of engine hit the automobile.

Plaintiff had been working as a waitress at a restaurant. She was riding home from work with three other women, who suffered injury in the collision. Plaintiff was merely a passenger and not the driver of the automobile.

The complaint consisted of two counts. Count One recites:

". . . . that the defendants negligently caused or negligently allowed the railroad engine they were operating as aforesaid to collide with the vehicle in which plaintiff was riding as aforesaid, and as a proximate consequence of said negligence, plaintiff suffered the aforesaid injuries and damages."

Count Two recites:

". . . . And plaintiff avers that on said occasion the defendants, Walter H. O'Neal and B. Bartlett, who were then and there servants or agents of the defendant, Atlantic Coast Line Railroad Company, a Corporation, while acting within the line and scope of their employment as such servants or agents, wantonly injured the plaintiff by wantonly causing or wantonly allowing the railroad engine, of which they were in charge and control as aforesaid, to collide with the vehicle

in which plaintiff was riding as aforesaid, and as a proximate consequence of said wanton conduct of defendants, plaintiff suffered the aforesaid injuries and damages.

"This Count is drawn under and by virtue of the act of the Legislature of the State of Alabama entitled 'Statutory suit against principal and agent or master and servant.' Said act being otherwise described as Title 7, Section 176(1) (2) (3) (4) (5) (6), of the Code of Alabama, as amended."

Defendant pleaded in short by consent with leave, etc. At the conclusion of the evidence, plaintiff struck the so-called wanton count and the case was submitted to the jury on the negligence count only.

Appellant has assigned 55 errors in the wife's case and 47 errors in the husband's case. Many of the assignments in the two cases are identical. We will not undertake to discuss seriatim the assignments argued, but will consider each proposition relied on for reversal as we understand appellant's brief

### A, B, & C.

In support of various assignments which assert that the court erred in overruling appellant's motion for judgment notwithstanding the verdict, in overruling appellant's motion to arrest entry of judgment, in overruling appellant's motion to expunge or vacate the judgment, in portions of the oral charge, and in overruling appellant's motion for new trial appellant argues two propositions to show error.

First.—Appellant asserts that because of Act No. 544, approved September 18, 1957; Acts of Alabama 1957, Vol. II, page 765; Code Recompiled 1958, Title 7, §§ 176(1)– (6); there can be no recovery against the master, when a servant or servants is made defendant, unless there is also a recovery against one or more of such servants so made defendants to the action; that in the instant case there was no recovery against either servant or employee who was joined

as defendant; and, therefore, there could be no recovery against the appellant who was the master.

Appellant relies on that provision of Act No. 544 which recites as follows:

"Section 4. In ·all such actions recovery may be had against the agent, servant or employee although no recovery is had against the principal or master, but there shall be no recovery against the principal or master unless there is a recovery against the agent, servant or employee."

Appellant's argument is substantially comprehended in the following excerpt from its brief:

"As stated, this 1957 Act does cover the field completely. It makes no exceptions. It makes no exception in the sweep of the provisions of Section 4. It recognizes no exception, in the provision that 'there shall be no recovery against the principal or master unless there is a recovery against the agent, servant or employee', joined as a defendant. It does not permit the contention, recognized in decisions rendered before its passage, that a recovery against the master alone could be justified by some sufficient evidence of negligence on the part of some other employee who was not joined. Such avenue has been closed by the statute which abolishes the previous procedure and forms of action, changes the statute of limitations in material respects and expressly provides that there shall be no recovery against the master unless there is a recovery against the employee joined and tried as a defendant. On the very face of the Act, the verdict of the jury acquitting the employees acquitted the Appellant and the judgment against Appellant is a nullity."

█ We do not agree that Section 4 of Act No. 544 applies to all actions against master and servant. Section 4, by its terms, applies to "all *such* actions." It seems to

us that the words, "such actions," refer to the form of action created by Act No. 544, that is, "the statutory suit against principal and agent or master and servant." We are of opinion that Section 4 does not apply to any action other than the "statutory suit" created by Act No. 544.

■ This we hold because of the rule that a statute which is an innovation upon the common law will not be extended further than is required by the letter of the statute; Lock v. Miller, 3 Stew. & Porter 13; Mobile Battle House, Inc. v. Wolf, 271 Ala. 632, 126 So.2d 486.

As it appears to us, the language of Act No. 544 does not, in actions other than the statutory action created by that act, either expressly or by implication, undertake to abolish the right of a plaintiff to recover against the master for negligence of a servant who was not made a defendant to the action, although the jury exonerate a servant who was made such a defendant.

■ Where liability of the master may be rested on account of the negligence of employees other than the employee who was made a defendant, a verdict against the master, but exonerating the employee who was made a defendant, is not inconsistent. F. W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534; Pollard v. Coulter, 238 Ala. 421, 191 So. 231; Southeastern Greyhound Lines v. Callahan, 244 Ala. 449, 13 So.2d 660.

■ When Count 2, which was drawn under Act No. 544, was eliminated, the case proceeded under the negligence count alone. Under that count, appellant would be liable for the negligence of its employees other than the engineer or conductor.

We point out that we are not deciding that, in a case were the complaint was drawn under Act No. 544, liability of the master could be rested on the negligence of an employee other than one who is a defendant in the action. Plaintiff invites us to decide whether Act No. 544 bars recovery against the master for negligence of a

servant, who was not made a defendant in the statutory action created by that act, when the defendant servants are exonerated. That is not this case and a pronouncement on that point would be dictum. State v. McKenney, 268 Ala. 165, 105 So.2d 439, on rehearing; State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283.

Second.—Appellant argues that even if plaintiff could recover for negligence of a servant or employee of appellant, other than the engineer or conductor, there is no evidence to support a finding that any other servant or employee was guilty of negligence which proximately caused plaintiff's injury.

■ The fireman and the brakeman testified that they were keeping a lookout to the north, which was to the left of the engine as it approached the crossing where the collision occurred. Appellant's summary of the evidence is set out above. Under the facts and conclusions stated in appellant's summary, neither fireman nor brakeman was guilty of subsequent negligence, that is, a failure to act when the peril to the approaching car became apparent to them. We are of opinion, however, that there was evidence to support a finding of subsequent negligence on part of fireman or brakeman and that the question was correctly submitted to the jury to determine whether or not fireman or brakeman negligently failed to act when the peril of the approaching car became apparent to them.

This we hold because of certain conflicts in the evidence which give rise to conflicting inferences and present a typical jury question.

For example, the engineer, fireman, and conductor testified that speed of train was 25 to 27 miles per hour; the brakeman said 30 or 35 miles per hour; and the witness Elliott said 40 to 50 miles per hour.

Hammond, Elliott, and Rutherford heard no bell or whistle, but Derico, Long, and

O'Neal said the whistle blew and the bell rang.

The brakeman testified that when he first saw the automobile, the front of the engine was fourteen steps of 3 feet each, or 42 feet, from the crossing and the automobile was 142 feet from the crossing. Appellant's answer to Interrogatory 13 recites as follows:

"13. When the locomotive was within fifty feet of the street the automobile came in view of the fireman and brakeman and the automobile was then at a place about 115 to 120 feet from the crossing."

The witness Rutherford testified that he was driving an automobile toward the north and toward the crossing on the side opposite that from which plaintiff was approaching the crossing from the north; that Rutherford's speed was about 15 miles per hour; that he, Rutherford, saw the plaintiff car "two or three blocks up" or "some couple of blocks away"; that he Rutherford was about "half a block" from the crossing when the collision occurred.

Plaintiff argues that the testimony shows that speed of plaintiff car was 15 miles per hour. Appellant argues that "Under all the evidence, it appears that the speed of the Kines automobile was much in excess of the speed of the train."

As to which is correct we do not undertake to decide. It is admitted by defendant's fireman and brakeman that they saw the automobile approaching the track, that they subsequently became aware of its peril, and gave warning to engineer who applied brakes. We are of opinion that it was permissible for the jury to find that the brakeman did or did not give warning promptly on discovery of the peril to the plaintiff car.

Also, we are not persuaded that the evidence forbids a finding by the jury that the fireman was negligent in keeping a lookout and thus was guilty of initial negligence. We think plaintiff is correct in the following statement:

"If the jury wished to take the alternative of believing the fireman himself when he said that he did not see the automobile in time, then they had a right to conclude that the only reason why he did not see it was because he was negligent in failing to perform his duty of keeping a proper lookout."

Louisville & Nashville R. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288; Pollard v. Crowder, 239 Ala. 112, 194 So. 161.

For the reasons stated above, we are of opinion that the court did not err in the several rulings assigned as error which rest on either the first or second propositions which have been considered.

### D.

Appellant asserts that the court erred in permitting plaintiff to display before the jury and use in argument a large chart which contained, among others, the following items:

"ETHEL KINES
"Waitress — Age 37
"A. OUT OF POCKET EXPENSES

| | | |
|---|---|---|
| "(1) Past Lost Earnings $225 a month for 23 months | | 5,200.00 |
| "(2) Future Loss Earnings $225 a month for 28 years | | 75,600.00 |
| "(3) Future Medical Expenses $40 a month (Doctors, Drugs, Artificial Leg) | | 17,760.00 |
| | TOTAL | 98,560.00 |

"B.   PAIN AND SUFFERING

"(1)  TO DATE:

| | |
|---|---|
| "$15 a day for 700 days | 7,000.00 |
| "(2) Future Pain & Suffering, Physical Handicap, and Embarrassment | |
| "$5 A day for 13,505 days | 67,525.00 |
| TOTAL | 74,525.00 |

"TOTAL OF A. PLUS B.   173,085.00"

---

Appellant insists that the court thus allowed plaintiff to place before the jury matters which were not in evidence and which are speculative, conjectural, and incapable of monetary measurement.

Appellant cites authority which supports its argument; e. g., Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331. This court has taken the contrary view. In Clark v. Hudson, 265 Ala. 630, 93 So.2d 138, this court refused to reverse where the trial court permitted plaintiff to use a chart which, as appears on page 129 of the transcript in that case, contained the following items:

"FUTURE AND UNCERTAIN DAMAGES

| | |
|---|---|
| "Studying to be a Coach–Teacher and Coach–Difference in Pay—$800 a Year—Now 23—Life Expectancy 43 years—$34,400—1/3 of Loss | 11,466 |
| "Pain and Suffering—25¢ a day—15,695 days | 3,923 |
| "Unable to Play with Little Girl | 400 |
| "Effect on Sex Life | 1,000 |
| "Future Medical Expense | 463" |

---

See: McLaney v. Turner, 267 Ala. 588, 104 So.2d 315.

We are of opinion that the court did not err in permitting plaintiff to use the chart in argument where, as here, the court, in overruling objection to use of the chart, said to the jury:

"THE COURT: Well, I will overrule it. I will explain to the jury—you understand, I think, gentlemen, that this is simply a matter of argument, it is presented as a part of the argument of the case by the plaintiffs, and it is not—of course, it is not evidence in the case, that is, that particular matter is not evidence, but in arguing a case, the attorneys do have a wide latitude in arguing their case.

"Now, whether you *ex*cept that or whether you reject it, that is up to you. This is simply a matter of argument. You are not bound by it one way or the other, but the attorneys may comment on it in arguing the case to you."

By Assignment 44, appellant asserts that the court erred in overruling objection to plaintiff's argument to the jury, which was as follows:

"When you come back here and you knock on that door back there, you read whatever your verdict is, that is going to be that lady's, it is going to be hers from now on out. And when you talk about how much it is, don't go back there—I ask you, don't go back there and give into your convictions, we want you to stand by your convictions, when you think about what we are talking about here, want you to stand by them and think about them, and not talk any-

thing about an appeal; if we give so much they won't appeal it. Good night, don't listen to that. The way they fought us in this case right here, regardless of what we get, I expect to go to the Supreme Court. Mr. Hare and I and Mr. Davis, we practice law in the Supreme Court, let us worry about that, let us worry about that—"

■ We are cited to no decision which approves or condemns this argument. In the argument, plaintiff asks the jury "to stand by your convictions" and not to reduce the award through apprehension of appeal. We are of opinion that such argument is within the bounds of forensic propriety and not improper.

We are of opinion that Assignment 52 is without merit and that the use, as "a matter of argument," of the chart pertaining to the duties of appellant at Avenue V was not improper.

### E.

The excessiveness of the verdict was a ground of the motion for new trial which was overruled.

Plaintiff suffered skull fracture, loss of leg, injury to shoulders and other injuries of comparatively minor nature, as well as pain and suffering. That she received severe, permanent, and extensive injury is proved beyond question.

■ The rules which govern review on this point are well understood. The practical application of this rule by appellate courts to verdicts challenged for this alleged vice is a matter of great difficulty as well as delicacy. Central of Georgia Railway Co. v. White, 175 Ala. 60, 62, 56 So. 574. The trial court refused to disturb the amount of the verdict and the presumption attending the verdict is thereby strengthened. When such is the case, the appellate court is very reluctant to substitute its judgment for that of the jury and court below unless the amount is so excessive as to indicate passion, prejudice, corruption, or mistake on the part of the jury. Liberty National Life Insur-

ance Company v. Weldon, 267 Ala. 171, 100 So.2d 696, 61 A.L.R.2d 1346; Airheart v. Green, 267 Ala. 689, 104 So.2d 687. When the whole evidence is considered, we cannot say that the verdict is so excessive as to so indicate.

### F.

Appellant assigns as error the giving of plaintiff's requested Charge 6 which recites as follows:

"PLAINTIFF'S CHARGE #6. The Court instructs you that if you are reasonably satisfied from the evidence in this case that the plaintiff, Mrs. Kimes, was riding as a passenger in an automobile being driven by Mrs. Parsons, and that the plaintiff had no right of control over the driver, then no negligence .on the part of the driver, Mrs. Parsons, if there was any, would constitute a defense to the right of the plaintiff, Mrs. Kimes, to recover in this case if she is otherwise entitled to recover.

■ Charge 6 states a correct proposition of law. Plaintiff was a passenger and not shown to be responsible for the acts of the driver, Mrs. Parsons. If plaintiff was "otherwise entitled to recover," the negligence of Mrs. Parsons would not be a defense for appellant or the other defendants. If plaintiff was otherwise entitled to recover, her right would be based on the negligence of defendants. If the negligence of the driver was also a proximate cause of the injury, such negligence would be merely a concurring cause and would not bar plaintiffs' recovery. Giving Charge 6 was not error.

■ Appellant assigns as error refusal of its requested Charge 15 as follows:

"15. The Court charges the jury that if you are reasonably satisfied from the evidence that the sole proximate cause of the collision between the automobile in which Ethel Kines was riding, and the train on the occasion in question was the failure of the driver of such automobile to stop before reaching the track

at such crossing, then your verdict should be for the defendants in the suit of Ethel Kines.".

This court has said:

"Charge D–18 is what is referred to in our cases as a 'sole proximate cause' charge. This court has held that the giving of such a charge is error when an issue of subsequent negligence is presented by the pleadings and proof. Mobile Cab & Baggage Co. v. Armstrong, 259 Ala. 1, 3, 65 So.2d 192; Seitz v. Heep, 243 Ala. 372, 374–375, 10 So. 2d 148; Alabama By-Products Corporation v. Rutherford, 239 Ala. 413, 415, 195 So. 210; Boyette v. Bradley, 211 Ala. 370, 375, 100 So. 647. * * *" Shepherd v. Johnson, 268 Ala. 69, 70, 104 So.2d 755.

The issue of subsequent negligence was presented here.

Moreover, the court charged in its oral charge as follows:

". . . Now, to further explain that, of course, in order for there to be liability on the part of the defendants, there must be some negligence on the part of the defendants, which was a direct, proximate contributing cause to the collision and the injury to the plaintiff. In other words, in order to put any liability on the defendant, that must be based on some finding by you, or some reasonable satisfaction of your mind that there was some negligence on the part of the defendants, and that that negligence directly contributed to cause the collision and the plaintiff's injuries. If the collision and her injuries were directly caused by something else, other than the negligence of the defendants, then the defendants would not be liable. I think that would be obvious to you under what I have already said in the charge. So, it would be for you to say whether or not there's any negligence on the part of the defendants, if so, whether or not that negligence was the efficient, direct, immediate cause of the collision. If so, the plaintiff is entitled to recover; if not, the plaintiff is not entitled to recover."

Charges 15 and 15–A were refused without error. The remaining errors assigned are, we think, covered by what has been written.

We are of opinion that the court did not err in refusing the affirmative charge requested by defendant or in overruling the grounds of the motion for new trial insisted on by appellant.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.