261 So.2d 398

METZGER BROTHERS, INC.,
a Corporation

v.

Samuel A. FRIEDMAN and Lowell Friedman, Individually and as Partners.

1 Div. 662.

Supreme Court of Alabama.

Dec. 30, 1971.

Rehearing Denied April 20, 1972.

388

Holberg, Tully & Hodnette and Howell, Johnston, Langford & Finkbohner, Mobile, for appellant.

Sam W. Pipes, Gordon B. Kahn, Mobile, for appellees.

BLOODWORTH, Justice.

Appellant, Metzger Brothers, Inc., appeals from an adverse judgment rendered in the circuit court of Mobile County, in favor of appellees, the Friedmans. Suit was originally filed by Samuel A. Friedman, individually. Subsequently, the complaint was amended to add Lowell Friedman (his son and partner) as a party plaintiff. In the amended complaint, plaintiffs (appellees) Samuel A. Friedman and Lowell Friedman, individually, and as partners, charged defendant, Metzger Brothers, Inc., Melvin A. Metzger, Albert W. Metzger, Leonard H. Metzger (these individuals being officers, directors and stockholders of Metzger Brothers, Inc.), Mrs. Louise Overall Hollinger, and Miss Mary Elizabeth Arnold, with four counts of trespass quare clausum fregit, and one count of conspiracy to commit trespass quare

clausum fregit. There was a verdict and judgment for appellees Friedmans against Metzger Brothers, Inc., a corporation, appellant, in the amount of $133,000, from which judgment appellant appeals to this court.

The facts of this case are somewhat complicated and are in dispute. Since substantially those facts most favorable to the plaintiff must have been accepted by the jury, as reflected by its verdict, we will state the facts in this light.

The Friedmans and Metzger Brothers occupied adjoining places of business on Dauphin Street in Mobile, Alabama. The Metzger Brothers' building fronted on Dauphin Street for approximately 75 feet, though at that time the business itself occupied only a third of the property, the remaining two-thirds being rented out. Metzger Brothers is a retail clothing business. The Friedmans rented space for their jewelry business in the adjoining building, then owned by Mrs. Louise Overall Hollinger and Miss Mary Elizabeth Arnold. The space leased by the Friedmans was approximately 12 feet wide and 60 feet deep. The Metzger building and the Hollinger-Arnold building were divided by a party wall, which was over 120 years old according to the testimony.

During 1958, Metzger Brothers was engaged in making plans for the demolition of its existing building and the construction of a new building at the same location. Before December of 1958, Metzger Brothers notified Hollinger and Arnold that it would remove its building from the land on which it stood and construct a new building in such a manner that the party wall would be affected.

In consequence of this notice, on December 15, 1958 Hollinger and Arnold advised the Friedmans in writing that they considered it necessary to enter the Friedmans' premises to make repairs, construction or reconstruction, particularly to remove the west wall (the party wall) and replace it.

The Friedmans were notified that such work would be commenced on or about February 1, 1959, and completed without unnecessary delay, and that during this time there would be constructed a temporary partition on their leased premises. They were further notified that the work would be done at the Friedmans' own risk as to their goods, wares, fixtures and stock, and that the Friedmans should take such steps as they deemed necessary to protect the same from theft or damage.

On January 27, 1959, Samuel Friedman replied to Hollinger and Arnold, in writing, advising them that removal of the west wall would damage his property and business on the leased premises, and that he did not consent to the work, but expressly objected thereto. Further, he wrote that he would personally hold the landlords liable for any damages he might suffer. (Hollinger and Arnold contended their right of entry was in accordance with the provisions of the lease between the Friedmans and themselves.) In his reply, Samuel Friedman denied the work was in accordance with the provisions of the lease.

Several attempts were made between the Metzgers and their attorney, on the one hand, and the Friedmans and their attorney on the other, to reconcile their differences so as to secure the Friedmans' permission to enter upon their leased premises.

On December 10, 1958, Metzgers entered into an agreement with Hollinger and Arnold relative to the party wall and the proposed demolition and construction of its new building. This agreement recited that the party wall was insufficient to support the proposed building to be erected by Metzgers and that Metzgers would remove its existing building, as well as the party wall and reconstruct the party wall entirely on its property with Hollinger and Arnold's building being given an easement of support in the new wall. The plans called for a temporary wall to be built, before the party wall was removed, which temporary wall would protrude from 9 to 17½ inches into the Friedmans' store. The Metzgers were given six months to commence the work and eighteen months within which to prosecute the same to conclusion, all the work to be done at its expense. This agreement between Metzgers and Hollinger and Arnold was made subject to the rights of the Friedmans under the terms of the Friedmans' lease with Hollinger and Arnold.

Though Metzgers attempted to obtain the Friedmans' agreement to the Hollinger and Arnold agreement, these efforts were unsuccessful. During the period of time that these negotiations were under way, the architect for Metzgers went ahead with plans for demolition of the old building, and with the construction of the new one. In the beginning, these plans had indicated the party wall would remain, but this was changed when Metzgers' architect came to the conclusion, after further consideration, that the party wall could not withstand the pile driving that was going to be necessary to construct the new building. 147 steel piles were to be driven into the ground as support for the building. This was deemed necessary due to the water table being approximately one foot below the surface of the soil at that point in downtown Mobile. Therefore, the plans were changed to provide for the removal of the party wall and the construction of a new wall entirely on Metzgers' property.

It thus became apparent to Metzgers that it was not going to be able to obtain an agreement with the Friedmans for entry upon their leased property, and the removal of the party wall. It seems that Metzgers concluded it could not properly shore up the party wall, if it were left standing, without going into the Hollinger-Arnold building and onto Friedmans' leased premises. Some of the testimony is to the effect that Metzgers' architect was of the opinion the existing wall might fall down and kill workmen or other people inside the building because of the pile driving

which would be undertaken when construction was commenced. Nevertheless, it appears that Metzgers' architect told Metzgers to go ahead and proceed to tear down and expose the wall. There is some testimony on the plaintiff's side to the effect that Metzgers had been told by its architect that the wall was unsafe and would likely be condemned.

On January 30, 1959, Metzgers let the contract for demolition of the existing building to Freeman Wrecking Company. On February 1, 1959, it let the contract for construction of its new building to J. F. Pate Construction Company. At some point during this period of time, Metzgers' negotiations with the Friedmans were turned over to Metzgers' attorney, Mr. Tully. When he was unsuccessful in obtaining the agreement of the Friedmans, it seems that Metzgers decided to go ahead with the demolition of its building, the tearing down of the party wall, and construction of a new party wall irrespective as to whether the Friedmans agreed or not. Thus, as a part of the Metzgers' agreement with Hollinger and Arnold, Metzgers agreed to indemnify the landlords against any claims of the Friedmans, and even agreed to pay their attorneys' fees, as well as paying the rent during the time work was being performed in the building. There is also evidence to the effect that Metzgers agreed to indemnify Pate for participating in the demolition. Pate, however, denies that it had any part in the demolition, contending that was the work of Shaw Freeman, or Freeman Wrecking Company.

It appears to be clear that plans calling for removal of the party wall were made prior to December 10, 1958. The Hollinger and Arnold written notice directed to the Friedmans and dated December 15, 1958, refers to removal of the party wall. This was two months before it was determined by the city that the wall should be condemned. Viewing the evidence most favorably to the appellees, it also appears that demolition of the Metzgers building

was begun a week or ten days before February 26, 1959, the date of the city's condemnation order.

Again, the tendencies of the evidence most favorable to the appellees indicate that prior to the commencement of the demolition, the party wall's condition was good, being fully capable of supporting the loads then imposed upon it, and could continue to serve for 30 years. Before the condemnation, the demolition contractor had removed primarily the third floor of the Metzgers building, and part of the next floor. Floor and roof joists were removed from the party wall in this process. There is evidence that a lot of plaster had been knocked off the party wall on the Friedmans' side, and while it is not clear that this was due to the demolition, this might be inferred by the jury from the evidence. One of the Metzgers testified by deposition that before the condemnation occurred, he and his architect went up to inspect the party wall when the third floor was being partly taken down. It may be inferred from his testimony that the party wall was being torn down at that time.

During the time from the commencement of the demolition to February 26, 1959, Metzgers' architect called on the city building inspector to come and inspect the wall. This occurred on six different occasions, as more of the wall was exposed during demolition of the building. Finally, after the sixth inspection, the city building inspector declared the party wall to be unsafe and condemned it, ordering the Friedmans to vacate the premises while the wall was being removed from the building. This notice was dated February 26, 1959.

According to the testimony of Samuel Friedman on the day before the condemnation, February 25, 1959, he met with Metzgers' attorney, Mr. Tully, and Albert Metzger. When these final negotiations proved futile, he testified that, "Mr. Tully and Albert got up and shook his finger in my face and said you'll see what we will do * * *." This is denied by Metzgers' wit-

nesses. It was the next morning the city building inspector came out, condemned the wall, declared the building unsafe, and ordered the Friedmans to vacate the building immediately.

After the condemnation, Metzgers served notice on the Friedmans that it was designated as Hollinger and Arnold's contractor for the purpose of removing the wall. On February 27, 1959, the Friedmans were notified by the landlord of the condemnation.

The Friedmans closed their store the same day they received notice from the city building inspector, moved their entire fixtures and stock of trade out of the premises to another location, thereafter removing to a third location. Subsequently, the Friedmans returned and reopened their store in April, 1960 at the location on Dauphin Street in the Hollinger-Arnold building.

The original complaint in this case was filed on December 9, 1959. The trial of this cause was delayed for ten years due to various pending declaratory judgment suits filed against several insurance companies on the equity side of the court. This law action was stayed until these cases were disposed of. Two of these suits have heretofore been before this court. Metzger Brothers, Inc. v. Royal Indemnity Co., 274 Ala. 643, 151 So.2d 244 (1963), and Ex parte Royal Indemnity Company, 279 Ala. 80, 181 So.2d 894 (1966).

The amended complaint on which trial was had, contained five counts. Four counts charge trespass quare clausum fregit. The fifth count charges conspiracy to commit trespass. Various pleas were filed by defendants, Metzger Brothers, Inc., Melvin A. Metzger, Albert W. Metzger, and Leonard H. Metzger, as well as defendants Louise Overall Hollinger and Mary Elizabeth Arnold. These pleas were amended from time to time. In essence, the amended pleas were to the effect that the Metzger defendants entered the premises under a license from defendants Hollinger and Arnold, as their contractor, under the terms of their lease with Samuel Friedman to make repairs and to do such work as they deemed necessary or proper, or as they should lawfully be required to make. To the pleas, the Friedmans filed several replications. These replications also were amended from time to time. In substance, the amended replications were to the effect that defendants in going upon the leased premises exceeded any rights or permission given them under the lease by willfully or wantonly causing the leased premises to be condemned as unsafe. The Metzgers and the other defendants joined issue on the replications.

In his oral charge, the trial judge set out the substance of the five counts, the amended pleas, and the amended replications. In substance, the trial judge charged the jury that if the defendants proved any one or more of their pleas to the jury's reasonable satisfaction, that would be a complete defense to the counts of the complaint unless the plaintiffs could prove their replications to the jury's reasonable satisfaction. The court concluded that if the plaintiffs could prove their special replications to the jury's reasonable satisfaction, though the pleas be true, the defendants exceeded their rights by willfully or wantonly causing the premises to be condemned, and plaintiffs might recover. Further, the jury was charged by the judge that the damages claimed in this case were both compensatory and punitive, and that plaintiffs, if entitled to damages, might be entitled to both. The only exception taken to the oral charge was by the defendants who excepted to the court's defining the words "general contractor" under the Alabama statutes.

The jury returned a general verdict finding only appellant Metzger Brothers, Inc., to be liable and assessing the damages at $133,000. Judgment was entered accordingly, and it is from this judgment that appellant appeals.

For purposes of argument, appellant has condensed its assignments of error and motions for new trial into five categories. In

the interest of brevity, and for perhaps a clearer understanding of the questions to be considered, we will utilize this categorical approach.

The first category concerns the refusal of appellant's request for the affirmative charge. At the conclusion of appellees' evidence, appellant requested the affirmative charge with hypothesis alleging that appellees had failed to introduce any evidence to show a trespassory act. The trial court refused to give the affirmative charge and appellant insists that, in the light of the insufficiency of evidence of trespass, this ruling constitutes error.

■ Unfortunately for appellant, we are precluded from a consideration of the merits of this assignment of error by a failure of the appellant to comply with Rule 9(b), Revised Rules of the Supreme Court of Alabama, 279 Ala. XXVI. Rule 9(b) provides as follows:

> "Appellant's brief under separate headings shall contain: * * * (b) under the heading 'Statement of the Facts,' a condensed recital of the evidence in narrative form so as to present the substance clearly and concisely, referring to the pages of the transcript, and if the insufficiency of the evidence to sustain the verdict or finding, in fact or law, is assigned, then the statement shall contain a condensed recital of the evidence given by each witness in narrative form bearing on the points in issue so as to fully present the substance of the testimony of the witness clearly and concisely; * * *."

Although appellant urges the insufficiency of the evidence, it has failed to give a condensed recital of the evidence in narrative form. The record in this case consists of 956 pages. It includes the testimony of thirteen witnesses and 161 exhibits. Appellant's "STATEMENT OF FACTS" consists of seventeen pages, although only eight pages are actually devoted to a purported condensed recital of the evidence in narrative form. No attempt was made to summarize the testimony of seven of the thirteen witnesses. The testimony of the other six witnesses was recited in a somewhat perfunctory manner and tended to state only those aspects of the testimony favorable to appellant. None of the witnesses' testimony was set out in designated paragraphs, but all the testimony was dealt with collectively in a general discussion. We do not consider this to be a compliance with the rule.

Appellant urges, in a reply brief, that Rule 9(b) requires a condensed recital only of that testimony which it considers has "bearing on the points in issue," and that appellant has substantially complied with the rule in that the testimony omitted had no bearing on what appellant considered to be the issues in this case. Appellant introduces its summarization with the statement, "Appellant now summarizes the testimony as to the condition of the wall at the time of its condemnation." Whether this is a correct interpretation of the rule we do not now decide, but we think that the complexity of the issues in this case precludes our concluding that the sufficiency of the evidence with respect to the condition of the party wall at the time of condemnation is the only issue before us requiring compliance with Rule 9(b).

We regret that we are forced to dispose of the complex question as to whether there was a trespass in this fashion. However, we consider that any other result would be tantamount to a complete nullification of Rule 9(b), and would be in direct contradiction to well established case law. See, Runge v. Mercantile Credit Corporation, 285 Ala. 183, 230 So.2d 240 (1970); First Methodist Church of Union Springs v. Scott, 284 Ala. 571, 226 So.2d 632 (1969); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Crestman, 277 Ala. 410, 171 So. 2d 119 (1965); 2A Ala.Dig., Appeal & Error, Key 766.

We do note that, before submission, appellant sought, by motion filed in this

court, to amend its original brief to set out the testimony of each witness in narrative form. This motion was denied by the court.

We conclude, therefore, that appellant has failed to comply with Supreme Court Rule 9(b), and that this failure constitutes a waiver of those assignments which urge the insufficiency of the evidence.

The second category of error argued by appellant charges error in the trial court's oral charge to the jury in which Sec. 65, Title 46, Code of Alabama 1940, defining a "general contractor," was read to the jury. Under the lease between appellees and Hollinger and Arnold, the landlord retained the right to enter on the premises for purposes of repair either in person or through their designated contractor. Appellant was appointed by Hollinger and Arnold as their "contractor" for purposes of tearing down the party wall. Appellant's several assignments of error complain that this part of the oral charge was "misleading and contrary to the law * * * and inapplicable to the factual situation." Appellant contends in brief that this portion of the charge conveyed to the jury a misleading impression of the lease and had the effect of submitting to the jury the interpretation of the terms of the lease when those terms were not ambiguous.

■■■ We agree with appellant that it is the duty of the court, and not the jury, to "analyze and determine the meaning of a contract * * * when its terms are clear and certain * * *." Air Conditioning Engineers v. Small, 259 Ala. 171, 176, 65 So.2d 698, 703 (1953). However, we cannot agree that the court's reading of the statutory definition of "general contractor" in its oral charge amounts to submitting to the jury the interpretation of the terms of the lease. Even assuming, arguendo, that reading the statutory definition in the oral charge might be erroneous, it is well settled, under the decisions of this court, that the court's oral charge must be considered as a whole, and if the charge as a whole states the law correctly, there is no reversible error even though a part of the charge, when considered alone, might be erroneous. New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25 (1962), reversed on other grounds, 84 S.Ct. 710, 376 U.S. 254, 11 L.Ed.2d 686, Ann. 95 A.L.R.2d 1412. In view of our conclusion that there is no reversible error in this part of the oral charge, we pretermit considering appellees' contention that the same was not properly excepted to.

■■■ The third category of error concerns the failure of the trial court to grant a discontinuance of the cause when the complaint was amended to change the suit from one by Samuel A. Friedman, individually, to one by Samuel A. Friedman and Lowell Friedman, individually, and as partners. Appellant contends that the amendment works a complete change in the cause of action in that it substitutes a cause of action accruing to a partnership for one accruing to an individual. The sole authority cited in support of this contention is Alabama Construction Co. v. Watson, 158 Ala. 166, 48 So. 506 (1908).

In the latter case, a suit on an account and for work and labor done was filed by one Watson alleging that he had performed work and labor for defendant and that defendant owed him a certain sum. Subsequently, Watson amended alleging that the work and labor was actually performed by himself and one Harrison acting as partners, but that he had later purchased Harrison's share of the partnership. The court held the amendment worked a complete change in the cause of action.

*Watson* is readily distinguishable on its facts from the case at bar. Amending allegations of a contract made with one person to allegations of a contract made with two persons may work such a departure from the original complaint as to constitute an entirely new cause of action. But this is no authority for the contention that amending a complaint containing allega-

tions of a trespass to property leased by one person to allegations of trespass to property leased jointly by the original plaintiff and another person constitutes such a change in the cause of action. In *Watson*, the change was in the cause of action sued on. There is no such change in the instant case, merely the addition of a joint owner as plaintiff.

Appellant's argument further overlooks the well established rule of law in Alabama that,

"A partnership is not a person, either natural or artificial, and it cannot, therefore, without the aid of a statute, sue in the firm name. Long v. K. C., M. & B. R. R. Co., 170 Ala. 635, 54 South. 62. * * *" Conn v. Sellers, 198 Ala. 606, 73 So. 961 (1917).

Title 7, § 141, Code of Alabama 1940, permits a partnership to be sued at law. "But the provisions of § 141, Title 7, supra, do not apply to plaintiffs so associated." Rose v. Beckham, 264 Ala. 209, 212, 86 So.2d 275 (1956).

In light of these rules, it is clear that the amendment could not, as contended for by appellant, have the effect of substituting a partnership for an individual as plaintiff. The amendment merely added Lowell Friedman as a party plaintiff in his individual capacity as joint owner of the business and joint lessee of the premises. This is permissible under our amendment statute Sec. 239, Title 7, Code of Alabama 1940.

The case of Birmingham Gas Co. v. Sanford, 226 Ala. 129, 145 So. 485 (1933), involved a similar situation. There, the plaintiff sued for injury to real property and subsequently amended to add his wife as joint owner. The court held:

"* * * The amendment adding the wife, the other joint owner, was not the statement of a new cause of action, but simply corrected a mistake in averment that the original plaintiff owned the entire fee, and no damages, not claimed in

the original suit, were sought. The cause of action under the amended complaint was the identical cause of action counted on in the original complaint. The amendment did not substantially change the claim or defense. The general identity of the transaction was preserved. The amendment, therefore, related back to the commencement of the suit, and arrested the running of the statute of limitations."

Appellant also contends that the statute of limitations had run before Lowell Friedman was added and therefore he could not recover. But, our cases hold that, under our amendment statute, an amendment adding a party plaintiff relates back to the commencement of the suit and the added plaintiff's action is not barred by the statute of limitations if the original suit was not barred. Crumly v. City of Birmingham, 244 Ala. 634, 15 So.2d 273 (1943); Birmingham Gas Co. v. Sanford, supra; 13A Ala.Dig., Limitations of Action, Key 124.

We conclude, therefore, that the assignments of error argued in category three have no merit.

The fourth category of assignments of error rests on the contention that the jury returned an inconsistent verdict. Appellant contends that the verdict is inconsistent in two respects. First, appellant says that there is an inconsistency in holding the appellant corporation liable but exonerating all the servants and agents of the corporation through whom the acts complained of would have to be performed. Since appellant is a corporation, its liability, of course, must rest on the principle of respondeat superior. Appellant contends that appellant's liability could only be based on acts performed by the defendants Leonard Metzger, Melvin Metzger or Albert Metzger, and that the verdict in favor of all these named defendants, but against appellant corporation is inconsistent and should be set aside.

We agree with appellant that, " * * * where the master and servant are sued jointly, a judgment against the master absolving the servant of liability for tort committed by the servant is inconsistent and must be set aside. * * *" American Southern Ins. Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 55, 151 So.2d 783, 785 (1963).

However, there is a well established exception to this rule to the effect that,

"Where liability of the master may be rested on account of the negligence of employees other than the employee who was made a defendant, a verdict against the master, but exonerating the employee who was made a defendant, is not inconsistent. * * *" Atlantic Coast Line Rail-Road Co. v. Kines, 276 Ala. 253, 258, 160 So.2d 869, 873 (1963).

The record in the present case would indicate that there were various individuals other than the three individual Metzgers who were employed by appellant corporation. J. F. Pate was employed by appellant as a building contractor; Benson was employed by appellant as their architect; Shaw Freeman was employed by appellant to demolish the existing structure including the condemned wall; Albert Tully acted as legal counsel on behalf of appellant during negotiations. None of these individuals were made defendants to the suit and hence are not within the rule of *American Southern Ins. Co.*, supra.

Whether a person is an agent or not is a question for the jury, unless the evidence is so conclusive that there is not even a scintilla from which the jury could draw an opposite inference. Connors-Weyman Steel Co. v. Kilgore, 202 Ala. 372, 80 So. 454 (1918); 14 Ala.Dig., Master and Servant, Key 284(1). Appellant's failure to comply with Rule 9(b) precludes an inquiry into the sufficiency of the evidence as to this aspect of the case. Therefore, we cannot say that there was not sufficient evidence from which the jury could conclude that some one or more of these individuals acted as agents, servants, or employees of appellant corporation, and that they did some, or all, of the acts complained of as the basis of the cause of action. In light of this conclusion, we cannot say the verdict is inconsistent.

Secondly, appellant insists that the verdict is inconsistent in exonerating Hollinger and Arnold while holding appellant liable, since in doing all the acts complained of appellant was merely acting as agent or servant of Hollinger and Arnold. This contention is without merit in that it is based on the unwarranted assumption that appellant was acting throughout in the capacity of such agent or servant.

Our cases hold that unless the evidence upon the question as to whether the relationship of master and servant existed is conclusive, one way or the other, the question is for the jury. Louisville & N. R. Co. v. Chamblee, 171 Ala. 188, 54 So. 681, Ann.Cas.1913A, 977 (1911); 14 Ala.Dig., Master and Servant, Key 284(1). We conclude that this question was properly submitted to the jury and that the jury's verdict is not inconsistent.

In category five of the assignments of error, appellant contends that the amount of damages awarded was so excessive as to require reversal of the judgment. We find no merit in this contention. As this court said, in Carlisle v. Miller, 275 Ala. 440, 444, 155 So.2d 689, 692 (1963):

"It is almost platitudinous to restate the guiding rules, but here they are: The verdict of a jury should not be interfered with merely because in the opinion of the court the jury gave too little or too much (Vest v. Gay, [275 Ala. 286, 154 So.2d 297] supra; Airheart v. Green, 267 Ala. 689, 104 So.2d 687; Alabama Great Southern Ry. Co. v. Baum, 249 Ala. 442, 31 So.2d 366); and the authority vested in the courts to disturb a verdict of the jury on the ground of ex-

cessiveness is one which should be exercised with great caution. Airheart v. Green, id.; McLaney v. Turner, 267 Ala. 588, 104 So.2d 315; Louisville & Nashville Ry. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288, 298. * * * "

Furthermore, as this court stated in Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963):

" * * * [W]here the trial court refuses to grant a new trial because he does not believe the verdict to be excessive, the favorable presumption attending the jury's verdict is thereby strengthened. * * * "

Appellee in this suit claimed punitive, as well as compensatory damages, and the trial court charged the jury with regard to the conclusions they must reach in order to award punitive damages. In light of this fact, the reluctance of this court to substitute its judgment for that of the trier of the facts (notwithstanding we might opine the jury gave too much), and the attendant presumption favoring the jury's verdict, we are unwilling to say that the damages awarded were excessive.

Let the judgment of the trial court be affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, MADDOX and McCALL, JJ., concur.

HEFLIN, Chief Justice (concurring):

On June 7, 1971, there was presented to this court a motion by the appellant to allow it to amend its brief so that the appellant's brief would comply with Rule 9 (b), Revised Rules of the Supreme Court of Alabama, 279 Ala. XXVI. This court voted to deny the appellant's motion. The majority of the court felt that the motion came too late since the appellees had already filed their brief, as well as a motion to affirm judgment because of the failure of appellant to comply with Rule

9(b). I voted to grant this motion. I was motivated by a philosophy that cases should be determined on merits rather than on technicalities. In my opinion, the amending of the brief at that time (which was before submission) would not have produced an unjust hardship on the parties or this court.

Act No. 964, Acts of Alabama, 1971 Regular Session, approved September 7, 1971, conferred broad "rule-making power" on the Supreme Court of Alabama and directed it to adopt a new system of rules to govern procedure on appeals for the purposes of simplifying appeals and of promoting the speedy determination of litigation in the appellate courts on the merits of the cases. To assist in carrying out this function, this court appointed an advisory committee to recommend to the court a new system of rules concerning appellate practice. It is my hope that such advisory committee and the Supreme Court will carefully review Rule 9(b), as well as other existing rules, decisions, and statutes which prevent decisions on the merits.

However, until said Rule 9(b) is changed, I feel I must follow the decisions of this court which support the treatment given Rule 9(b) in this case. Therefore, I concur in the opinion of Justice BLOODWORTH.

## ON REHEARING

BLOODWORTH, Justice.

Appellant has filed an application for rehearing. Appellant contends again that its original brief did comport with Rule 9(b), Revised Rules of the Supreme Court of Alabama, 279 Ala. XXI, XXVI, requiring a condensed recital of the evidence given by each witness in narrative form bearing on the points in issue. We think we fully answered this contention in our original opinion. However, in view of earnest insistence of able counsel, we will add that we have re-examined our holding and we fail to see how the brief can be considered

to be in compliance with Rule 9(b), when it sets out some, but not all, of the witnesses' evidence, in narrative form, bearing on the point as to the sufficiency of the evidence to support the trespass counts, and wholly fails to set out any such evidence as to the conspiracy count.

Then, appellant urges that we reconsider, and change, our ruling (made before submission) when we denied the appellant's motion to amend its original brief in order to set out the testimony of each witness in narrative form. Appellant contends that when this court considers the sufficiency of the evidence to support the trespass counts, it will find the evidence to be insufficient, and the cause would be reversed

Appellant cites numerous cases for the proposition that "deficiencies and errors in Appellant's Appeal" can be corrected up to the time of submission of the case. However, all of the cases appellant cites are instances where this court permitted supplemental transcripts to be filed prior to submission in order to correct omissions in the original transcript. None of these cases has any bearing on the question as to whether supplemental briefs may be filed prior to submission to correct omissions or errors in the original brief.

Moreover, there are two cases which are clearly in point on this issue. The first is the recent case of Kinsaul v. Florala Telephone Company, 285 Ala. 16, 228 So.2d 777 (1969), in which this court concluded as follows:

"The index to the record shows that seven witnesses testified, but there is no effort by appellants to comply with Rule 9(b). When there is no compliance with the rule, we apply the presumption that the record contains evidence to sustain every finding of fact. Evergreen Heading Co. v. Skipper, 276 Ala. 623, 165 So. 2d 705; Nixon v. Richardson, 281 Ala. 632, 206 So.2d 877.

"*Although appellants filed a reply brief in which an attempt was made to meet objections to their original brief raised by appellees, such brief cannot be looked to in order to determine whether the original brief complies with Supreme Court Rule 9.* Piper Ice Cream Co. v. Midwest Dairy Products Corp., 279 Ala. 471, 187 So.2d 228." [Our emphasis]

The other case is Piper Ice Cream Co. v. Midwest Dairy Products Corp., 279 Ala. 471, 187 So.2d 228 (1966). The pertinent portion of that decision is as follows, viz:

"Appellees, in their brief, insist that the decree should be affirmed on the ground that appellants' brief fails to comply with Supreme Court Rule 9, in that it does not contain 'a condensed recital of the evidence given by each witness in narrative form bearing on the points in issue so as to fully present the substance of the testimony of the witness clearly and concisely * * *' Supreme Court Rule 9. Appellees also insist, in effect, that appellants' brief is also deficient in that it does not comply with subsection (d) of Supreme Court Rule 9, which requires that an appellant's brief contain 'argument with respect to errors assigned which counsel desire to insist upon.'

"In a reply brief counsel for appellants seek to meet the requirements of subsection (d), supra, by pointing out the assignments of error which each of their propositions of law was intended to cover. *But the reply brief cannot be looked to in order to determine whether appellants' original brief complies with Supreme Court Rule 9.* See Lunney v. Southern Ry. Co., 272 Ala. 611, 133 So. 2d 247; Alabama Equipment Co. v. Ewin, 274 Ala. 308, 148 So.2d 209." [Our emphasis]

While both of these cases dealt with deficiencies with regard to Rule 9, the deficiencies were sought to be corrected in a "reply" brief, rather than in a "supplemen-

tal" brief. But, we see no valid distinction between the two with respect to whether the motion to file the "supplemental" brief should be granted in this case.

To like effect is the recent case of Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1969). There, we held the filing of copies of the transcript on submission of the cause, under Rule 40, Revised Rules of the Supreme Court, 279 Ala. XXI, XL, could not supply a deficiency in the original brief in failing to set out a recitation of the testimony of each witness in narrative form as required by Rule 9.

Several observations this court made in the opinion in Allen v. Axford, supra, are pertinent here.

"Counsel for the appellee has performed his full duty when he files his brief replying to the points raised in appellant's brief. If appellant's brief is deficient in form, counsel for appellee is justified in relying on this deficiency in answering the contentions of the appellant.

. "To accord to appellant's contentions in the present case that by filing additional copies of the record at the time of the submission of this cause, he can thereby cure a defect in his brief which had been filed well in advance of submission, as was appellee's answering brief, would in effect abrogate Rule 12.
"Such result would be highly undesirable. * * *"

A majority of the court in consultation is convinced that the cases, which we have cited, clearly show this court is committed to the rule that Rule 9(b) deficiencies in an original brief may not be corrected by way of reply or supplemental brief.

We might say that we did not intend, by our language in Albright Equipment Co. v. Waddell, 284 Ala. 329, 224 So.2d 878, to suggest any different rule from that reflected in our decisions just mentioned.

The reason that Rule 9(b) requires a condensed recital of the evidence in narrative form is self-evident in the case at bar, in which the transcript consisted of 956 pages, 13 witnesses testified, 161 exhibits were offered, and the issues are complicated and involved.

We are yet of the opinion and view that our original decision was correct.

Opinion extended; application for rehearing denied.

HEFLIN, C. J., and COLEMAN, MADDOX and McCALL, JJ., concur.