MOSES E. CANTOR, Respondent, *v.* NATIONAL SURETY COMPANY, Appellant.

Fourth Department, March 12, 1924.

Insurance — burglary and robbery insurance — verdict that robbery and theft of diamonds was committed is against evidence — error to admit evidence that on same day two men appeared at another place and asked to be shown diamonds.

In an action to recover on a policy of burglary and robbery insurance based on the claim by the plaintiff that he was robbed of diamonds while he was in his place of business in an office building, in which it appeared that the alleged robbery of practically the entire stock of the plaintiff occurred two days after the policy was issued, the verdict in favor of the plaintiff that a robbery was committed based entirely upon plaintiff's testimony as to the robbery is against the weight of the evidence.

It was error to admit evidence that a tall man and a short man called at a jewelry store on another street the same afternoon and asked to look at diamonds.

APPEAL by the defendant, National Surety Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 24th day of October, 1921, upon the verdict of a jury; also from an order entered in said clerk's office on the 28th day of October, 1921, denying the defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the same day denying the defendant's motion to have the trial declared a mistrial and the verdict set aside.

*Prince & Nathan* [*Sidney J. Loeb, Leon M. Prince* and *George R. Fearon* of counsel], for the appellant.

*Solomon Ferguson* [*L. Earl Higbee* of counsel], for the respondent.

DAVIS, J.:

The plaintiff has recovered a verdict on a policy of insurance indemnifying him against loss by burglary and robbery. From the judgment in plaintiff's favor and from certain orders denying a new trial the defendant has appealed.

The judgment could be affirmed if we were convinced that the plaintiff was actually robbed. At the time of the alleged robbery he was engaged in business on the second floor of the Seitz Building in the city of Syracuse. This building is located in or near the principal business center of the city. The single room that plaintiff occupied was on the same floor with and adjacent to many other professional and business offices, to and from which people were constantly going and coming. The floor was reached by elevator and stairs.

The chronology of events is interesting. On December 15, 1920, plaintiff took possession of the premises under his lease. He claims he purchased diamonds from a wholesaler on December twentieth, aggregating more than $5,000 in value. He immediately solicited insurance. The policy was issued that day and delivered December twenty-second. He paid the premium December twenty-third. The alleged robbery of practically his entire stock occurred December twenty-fourth. Here his business ended, except the collection of insurance.

The further facts concerning this business enterprise and its sanguinary ending disclose that he made small purchases of jewelry and diamonds in late November and early December, arranged to lease the premises in question, and had some qualified occupation of them a few days before his lease actually began. He was twenty-two years of age, without experience in the jewelry business except such as he gained during a short period when about thirteen years of age, while employed in sweeping and cleaning a jewelry

store. With this preparation and equipment, and with some capital acquired in various other business enterprises, which involved the history of two fires with the incidental collection of insurance, he started in the business of jeweler and pawnbroker. He had no pawnbroker's license. He did business under the name of " Cantor Brothers," although he had no partner and had filed no certificate that he was doing business under an assumed name. Beginning December twelfth he inserted some small advertisements in local papers, nearly all of them stating merely that he had money to loan. Only a few mentioned the fact that he had any jewelry to sell. During the period from December fourteenth to December twenty-fourth, inclusive, he claims to have made twenty-one loans on jewelry for small amounts, aggregating six hundred and sixty-five dollars. He charged six per cent interest on loans. His total receipts of interest on these loans were three dollars and seventy-four cents. During the same period he claims to have made three sales, a diamond on December twenty-first, one hundred and seventy dollars; a clock on December twenty-second, six dollars, and a diamond ring on December twenty-third, thirty-five dollars. His profits are not stated, but it would not seem from these facts that the business was highly lucrative. His purchases of diamonds were made largely on credit. His bank balance and cash on hand were inconsiderable in amount.

The actual robbery, according to plaintiff, occurred at about five-fifteen to five-thirty in the afternoon of December twenty-fourth. A boy employed to help, whose duties could not have been onerous under the circumstances, had just been sent out to obtain his lunch and to bring a lunch to plaintiff. He returned in a very short time. The plaintiff's books indicate that the only business done that day was three small loans. He claims that shortly after the boy had departed two men came in. One remarked that he had about $500 to spend for a diamond, whereupon plaintiff proceeded to take out and display to them at one time practically his entire stock, including some pledged diamonds. Then one presented a revolver and told him to keep quiet, and the other took the diamonds, aggregating about $6,000 in value, and put them in his overcoat pocket. The man with the revolver then pulled a chain that switched off the electric light, and both departed. When plaintiff recovered from his paralysis of fear, he threw a heavy iron object called a " cigar lighter " through the glass door. He then ran out into the hall, making no outcry, rang the elevator bell twice and then ran back. A woman in an adjoining office attracted by the noise of the breaking glass, appeared and inquired what was the trouble. Appearing greatly

agitated, he informed her there had been a " hold up " and asked permission to use her telephone. He called the police station and an investigation was made.

The plaintiff was able to describe his visitors with great accuracy as to their appearance, height and the details of their dress, and even the revolver which one of them used. It is rather remarkable that in the brief period of the interview he should have been so observant of the personal appearance of two men whom he merely took to be customers. No one else saw any such persons, nor have they been seen or heard of since. There is no word of corroboration that they or any persons were in plaintiff's room, except that a lawyer from an adjoining office passing out at about that time heard voices there in conversation. This, of course, might have been plaintiff and his boy helper. The man occupying an adjoining office, who had theretofore been annoyed by conversations in plaintiff's room, easily overheard through the thin partition, heard no conversation at this time, though his attention was attracted by the crash of the glass.

Where the story of a witness too strongly violates probabilities, grave doubt is cast upon its credibility. We have recently had occasion to remark that certain claims of this nature overtax ordinary credulity. (*Garten* v. *General Accident, F. & L. Assur. Corp., Ltd.,* 206 App. Div. 154.) The story of the plaintiff imposes a severe strain upon human capacity of belief. We think his testimony, taken in connection with fictitious or erroneous claims of loss he subsequently made, and certain incidents of the trial which reflected on his credibility as a witness, furnish justification for the conclusion that the verdict on the main question as to whether any robbery actually occurred, is against the weight of credible evidence.

Furthermore, we think it was error to admit evidence that a tall man and a short man called at a jewelry store on another street that same afternoon asking to look at diamonds. There was no sufficient description to identify them as the same men who it is claimed robbed plaintiff. Proof that another was possibly exposed to a similar danger was not relevant or competent. (*Rosenberg* v. *People's Surety Co.,* 140 App. Div. 436, 437.) If the facts and merits were clear, we might regard the error harmless, but under the circumstances, we cannot say it did not serve to induce the verdict.

The judgment and order denying a new trial should be reversed and a new trial granted, with costs to appellant to abide the event. The appeal from the order denying defendant's motion for a mistrial should be dismissed.

All concur; CROUCH, J., not sitting.

Second Department, March, 1924. [Vol. 208

Appeal from order denying motion for mistrial dismissed. Judgment and order denying motion for new trial reversed on the law and facts and new trial granted, with costs to appellant to abide event.