The suit is upon a policy commonly known as "burglary insurance". Plaintiff insists in his complaint and proof that his iron safe situated in the office of his bakery business in Anniston, Alabama, was on the morning of April 17, 1938, burglarized, resulting in the loss of money and securities. There was verdict and judgment for $880 from which the defendant company prosecutes this appeal.
The policy provided in the insuring and covering clause as follows: "Indemnity for loss — 1. To indemnify the Assured for loss by burglary, which shall mean the felonious abstraction of any of such insured property from within the insured part (as specified in Item 8 of the Declarations) of such safe or vault, by any person or persons making felonious entry into such safe and such insured part thereof, and also into the vault, if any, containing such safe, when all doors of such safe and vault are duly closed and locked by all combination and time locks thereon; provided that such entry shall be made by actual force and violence of which there shall be visible marks made by tools, explosives, electricity, gas or other chemicals, upon the exterior of (a) all of said doors of such safe and of the insured part thereof and of the vault, if any, containing such safe, if entry is made through such doors; or (b) the top, bottom or walls of such safe and of the insured part thereof and of the vault, through which entry is made, if not made through such doors. If only the vault and not the safe, if any therein, is so entered, the Company's liability shall not be greater than the respective amounts stated in Section (e) of Item 8 of the Declaration;" There was proof the doors of the safe were closed and locked as provided in the above clause and there were marks of violence both upon the outer and inner doors of the safe.
When discovered the outer door was open, with marks upon it "looked like *Page 419 
pipe wrench marks" and its handle was bent, though it was locked by the combination. The inner door was also open and the locking mechanism was on the floor in front of the safe. The handle was bent. Plaintiff stated the lock on the inside door was broken. "There were pieces of it laying on the floor", and the handle of the inside door was "twisted". Photographs of the safe disclosed some indentations. We omit details of proof and rest content with statement of our conclusion the proof was sufficient for the jury's consideration as to whether or not the alleged loss came within the coverage of the policy. See authorities cited on page 857-859, 41 A.L.R.; Vol. 5 Couch Ency. of Insurance Law, § 1184; American Surety Co. v. Southern Oil Stores, 24 Ala. App. 114, 133 So. 298. The affirmative charge requested by defendant was properly refused.
The delivery of the insurance policy to the insured and its possession by him, and also his renewal certificate in his possession, suffice to show a consideration, an extension of credit express or implied, and the argument the affirmative charge was due defendant for failure to make proof of payment of the premium is without merit. 26 C.J. 61; Queen Ins. Co. v. Bethel Chapel, 234 Ala. 184, 174 So. 640; Title 7 Section 374, Code 1940.
The discussion to be found in Globe Rutgers Fire Ins. Co. v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827, involving an oral contract to insure (as distinguished from contracts in writing governed by Title 7, § 374, Code 1940) sufficiently discloses, without further comment, the reasoning upon which the above conclusion is reached.
The money and securities were shown to have been placed in a money bag inside a paper bag. Plaintiff had no connection with placing the money in the bag and was not present when it was done. He was at the hotel in Anniston and on Saturday night his employees carried this bag to his home and delivered it to his wife. Plaintiff's wife suffering from "sick headache" under physician certificate did not testify and no "showing" as to her testimony was offered by plaintiff.
Clearly, therefore, as to the amount of money in the bag when placed in the safe by plaintiff who did never count it, there was an important missing link in the proof and the objections interposed to his testimony upon this theory were well taken. His own testimony discloses reliance upon this point was purely hearsay. Counsel for plaintiff replies that if there was error it was without injury, upon the theory defendant subsequently offered the testimony of plaintiff taken, on former trial which contained such statement without objection. We doubt the soundness of this contention, but pass the matter of error without injury without definite decision as we entertain the view the cause is due to be reversed upon other grounds now to be considered.
Plaintiff alleged in his complaint, pursuant to the language of his policy that his safe was burglarized and the burden of proof rested upon him to reasonably satisfy the jury of this fact. Cantor v. National Surety Co., 208 App. Div. 370,204 N.Y.S. 35; Marian Cloak Co. v. American Surety Company, Sup., 190 N.Y.S. 577. That the contents of the safe were removed by plaintiff or through his procurement would, of course, be wholly inconsistent with the allegations of the complaint that the safe had been burglarized, and was properly presented under the plea of the general issue.
As said in Fidelity-Phoenix Ins. Co. v. Murphy, 226 Ala. 226,146 So. 387, 388, "if the substance of the plea is inconsistent with the complaint, it is but an expression of the particular claim of the defendant as to why the complaint is not true, and which is embraced in the general issue". See also Employers Insurance Co. v. Diggs, 234 Ala. 425, 175 So. 344.
In view of the issue thus presented we think the trial court too narrowly restricted defendant in its proof. The burden resting upon plaintiff to show that his safe had been burglarized, any material evidence tending to the contrary, though it may place plaintiff himself under suspicion, should be submitted to the jury for their consideration. The circumstances surrounding this particular loss were somewhat unusual and sufficient to reasonably arouse inquiry.
The loss was discovered by an employee Monday morning. There was no pretense of any indication of a forcible entry into the building or into the office on the second floor where the safe was located. The outer doors of the building were locked on Monday morning at the time the alleged burglary was discovered, the office was also locked and the combination and lock on the outer door *Page 420 
of the safe were not materially damaged and when found the outer safe door was open, the combination locked and the bolts thrown. The combination was unlocked and has been working and in constant use since that time. As to the inner door there is much proof tending to show the locking mechanism was not broken but removed by unscrewing a nut on the inside of the door thereby releasing the locking mechanism which was found on the floor, and when the employees of plaintiff so discovered it they reassembled the locking mechanism and then replaced the inner door and it has worked continuously without further repair.
The testimony of Powell, the expert, was to the effect that entry could be effected into the safe only by unlocking the combination on the outer door or breaking the lock. The proof was the lock was not broken nor was the combination to the safe damaged, and twisting the handle on the inner door was without effect on the locking mechanism. Only plaintiff and a trusted employee, Miss Huggins, against whom no suspicion points, had the combination to the safe. The key to the inner door was in the office. It was either in the night before or early morning of the 18th when the burglary occurred.
Plaintiff went to his place of business about 7:30 o'clock Monday morning but evidently stayed only a short time and states he did not look into the office. He learned of the burglary about ten o'clock Monday morning when his wife telephoned him at the hotel. He did not go to his office until three o'clock that afternoon in company with Turner the Chief of Police.
Turner testifies that it looked to him as an "inside job". The outer door appeared to him not to have been "tampered with" and that it had been unlocked by the combination. The inner door had "apparently been unlocked", and the locking mechanism removed by taking out the screws from the rear of the door. Plaintiff admits he told Turner "it looked like an inside job", and he made no request of Turner for further investigation. Plaintiff now explains on the trial that by the expression "inside job" he meant so far as breaking into the building was concerned. But there was no such explanation when the conversation occurred. Plaintiff says he placed the money in the safe between ten and twelve o'clock Sunday morning. He insists the amount of the loss was $730 in cash and $68.85 in unrecovered checks. Defendant offered to show in varying ways, statements both verbal and written to Hamilton, defendant's agent, and questions propounded to plaintiff on cross-examination of him as a witness, substantially the following proof to which in each instance the court sustained objections interposed by plaintiff: That plaintiff was drinking heavily on Friday night before the loss of the money, also on Saturday, and Saturday night, Sunday and Sunday night; that on Friday night he went to the hotel in Anniston and engaged in gambling; that he won about $400 and remained in the game until two o'clock Sunday morning; the game was broken up and continued elsewhere and then returned to the hotel and he got into a dice game, had been drinking heavily; that he lost what he had won and $800 besides; the game broke up Monday morning and plaintiff lay down and went to sleep.
The Chief of Police, testifying the combination to the outer door was in order and without any marks of violence and that it was unlocked by the combination, after stating it was an inside job, was asked if he told plaintiff that someone had opened the safe by working the combination and that the inside door had been unlocked with a key, and objection was sustained, as well as also to the further question if plaintiff, after their conversation made request for any further investigation. This was error. Greenwood v. Bailey, 28 Ala. App. 362, 184 So. 285; 22 C.J. 321; 31 C.J.S., Evidence, § 294.
Objection was also sustained to the question propounded to witness Hamilton as to whether or not in his interview with plaintiff the latter appeared nervous. This was the afternoon of the day the burglary was alleged to have been discovered and we think the proof should have been allowed. Alabama Power Company v. Smith, 229 Ala. 105, 155 So. 601; Southern Natural Gas Co. v. Davidson, 225 Ala. 171, 142 So. 63.
We conclude also the trial court should have permitted the numerous details of proof hereinabove very generally outlined as to plaintiff's conduct during the period inquired about as it bore upon a material issue in the case. It was proof to be considered by the jury in their deliberations as to whether or not they were reasonably satisfied that in fact a burglary had been committed. *Page 421 
What has been said should suffice for another trial of the cause. For the errors indicated the judgment will stand reversed.
Reversed and remanded.
BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.