151 So.2d 244

**METZGER BROTHERS, INC., et al.**

**v.**

**ROYAL INDEMNITY CO. et al.**

J Div. 39.

Supreme Court of Alabama.

March 14, 1963.

Holberg, Tully & Hodnette, Mobile, for appellants.

Thornton & McGowin, Mobile, for appellees.

SIMPSON, Justice.

This is an appeal by the complainant from a final decree of the Mobile County Circuit Court, In Equity, dismissing a bill for declaratory judgment as to one of the respondents.

The bill sought a stay of a certain tort action against appellant on the law side of the circuit court; interpretation of a certain building or construction contract entered into between Metzgers (appellants) and Pate (appellee); and interpretation of two one-million-dollar liability insurance policies issued by Royal Indemnity Company in connection with the construction.

Demurrer filed by Pate was sustained to the bill and the bill, as amended, resulting in a final decree dismissing the bill for failure to amend.

From the allegation of the bill we draw the following facts:

Metzgers acquired two adjoining store buildings known as 104 and 106 Dauphin Street and desired to demolish the existing structures and build a new building. The property at 102 Dauphin Street, which was occupied by Friedman (the plaintiff in the suit pending at law) was separated from one of the newly acquired Metzgers buildings by a party wall, the property line running through the center of the wall. The building at 102 Dauphin Street was owned by one Mary E. Arnold and Louise O. Hollinger who had leased their premises to said Friedman. Metzgers entered into a written party wall agreement with Hollinger and Arnold giving Metzgers the right to remove the party wall in conjunction with their new building plans, to be rebuilt at Metzgers' expense, also including the obligation of Metzgers to put up a temporary partition wall.

Metzgers and Pate entered into a contract for construction of the new building, and work in connection with the demolition of the old buildings with the following exception:

"A portion of the work described in the specifications entitled and identified, 'Section 1. Demolition' is to be undertaken by Freeman Wrecking Company, Incorporated, pursuant to the terms of a contract dated January 30, 1959 between the said Freeman and the said Owner [Metzgers], and which said contract is by reference made a part hereof; it being agreed that pursuant to said Freeman contract, the said Freeman is to undertake the actual wrecking and demolition of said improvements and the removal of same consequent thereupon; all other duties and obligations imposed upon 'Contractor' under said SECTION 1. DEMOLITION remaining as the duty and obligation of the said Pate."

The contract contained the following clause with relation to indemnity:

"Unless due solely to the negligence of Owner, its agents or employees, Contractor agrees fully to exonerate, indemnify and save harmless Owner, its successors and assigns, from and against any and all claims, demands, causes of action and judgments, based upon or arising out of damage and injuries (including death) to persons or property caused by, arising out of, or sustained in connection with the performance of the contract or by conditions created thereby, and among other things, if requested by Owner, to assume, without expense to Owner, the defense of any such claim, action or demand."

Metzgers in a letter to induce Pate to enter the building contract agreed:

"We agree to indemnify and hold harmless you, your agents, servants, employees and/or subcontractors, from and against any and all claims, actions, debt, loss, damage, expense or demands made or asserted by any owner or any tenant of the adjoining premises on the East (known as 102 Dauphin Street)

or anyone claiming through or under them, or either of the [sic]; any or all of which shall be directly or indirectly attributable to your undertaking and/or performing your contract obligations under said contract, including, without thereby limiting the generality hereof, claims for damages based on loss of business, loss of profits, loss of rents, interference with business, or otherwise, other than damage to building itself or its contents, or to persons, caused by negligence on your part in the manner of performing said contract. We further assume all liability with respect to designating the location of the East wall to be constructed."

Metzgers entered into a contract with Freeman Wrecking Company. for the demolition of the existing structures. The contract among other things required that Freeman procure insurance. Pate was not a party to this contract but was expressly excluded from any responsibility for this work, although the contract was to be performed in connection with Pate's time schedules. Pate was not required to superintend the wrecking work by Freeman. It does not appear that Pate entered into any contract with Freeman Wrecking Company.

Freeman proceeded with demolition of the existing structures and the third floor of 104 Dauphin Street was removed and the party wall exposed. Upon an inspection by the City Building Inspector, 102 Dauphin Street was condemned and Friedman ordered to move. Some ten months later Friedman sued Metzgers, Arnold and Hollinger for trespass quare clausum fregit and conspiracy to trespass, based upon the demolition occurring on February 26, 1959, resulting in the occurrence of condemnation.

Two policies of insurance were issued by Royal Indemnity Insurance Company, both in the amount of one million dollars. The Metzgers' policy was a manufacturer's and contractor's liability naming Metzger Brothers as insured. The Pate policy was a comprehensive general liability policy spe-

cifically including demolition and construction operations at 104–106 Dauphin Street. An endorsement on the policy contained the complete indemnity agreement in the Pate-Metzger contract.

The lower court in sustaining appellee's demurrer to the bill must have done so on the basis that the exhibits to the bill showed conclusively that the Friedman suit arose out of the performance of the Freeman Wrecking Company contract, i. e., the demolition, and hence no justiciable controversy with reference to this matter existed between Pate and Metzger.

The issue is resolved into the question of whether the bill presented a "justiciable controversy" between Metzger and Pate. If there were no justiciable controversy between them alleged in the bill, then the sustaining of the demurrer would not be error nor would have the subsequent dismissal of the bill.

█ The test of sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the complainant will succeed in getting a declaration of rights in accordance with his theory and contention but whether he is entitled to a declaration of rights at all, and if the complaint states the existence of a bona fide justiciable controversy which should be settled, a cause of action for declaratory judgment is stated and the demurrer should be overruled. Orkin Exterminating Co. of North Ala. v. Krawcheck, 271 Ala. 305, 123 So.2d 149, and cases therein cited; see 7A Ala.Dig., Declaratory Judgment, ☞313.

█ Where no actual controversy as to a justiciable question is alleged, a demurrer to the bill seeking declaratory relief should be sustained. Curjel v. Ash, 263 Ala. 585, 83 So.2d 293; see 7A Ala.Dig., Declaratory Judgment ☞325.

█ We are clear to the conclusion that no bona fide justiciable controversy is presented by the bill and the sustaining of the demurrer was proper. The exhibits expressly negative any duty on the part of Pate to defend Metzger in the action at law. We take note of the date of the alleged tort, February 26, 1959, which is at a time before Pate commenced its contract with Metzgers. The absence of a contract between Pate and Freeman Wrecking Company indicates that Pate did not subcontract the work and was not to be responsible for Freeman's work. The existence of a contract between Metzgers and Freeman to be performed under the supervision of an architect, also negates any possibility that Freeman might be Pate's subcontractor. The express exclusion in the Pate-Metzger contract providing that Freeman handle all demolition work, would not enable Metzgers to foist liability under the "indemnity clause" to Pate because the damages would not be "sustained in connection with the performance of the contract or by conditions created thereby", and the Friedman suit was for demolition which was Freeman's sole responsibility.

Pate's obligation to defend Metzgers being contained in the "indemnity clause" of their contract, and it appearing that the Friedman suit is based upon an alleged tort not committed in connection with that contract, we fail to see how any actual controversy as to a justiciable question is presented between Metzgers and Pate.

We find no error in the ruling below.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.