299 So.2d 232

**ROYAL INDEMNITY CO.,**
a New York corp.

v.

**METZGER BROTHERS, INC., a corp.,**
et al.

**SC 287.**

Supreme Court of Alabama.

Aug. 15, 1974.

Alton R. Brown, Jr., Mobile, for appellant.

Howell, Johnston, Langford, Finkbohner & Lawler, Mobile, for appellees.

**HARWOOD, Justice.**

This appeal involves one phase of litigation begun some fourteen years ago. The delay in ultimately concluding this controversy has resulted from decrees and appeals therefrom in a declaratory action filed against its insurer by Metzger Brothers, Inc., and Melvin Metzger, Albert W. Metzger, and Leonard H. Metzger (hereinafter referred to as Metzgers), after Samuel A. Friedman and Lowell Friedman had filed a suit against Metzgers claiming damages for trespass quare clausum fregit and for conspiracy to commit such trespass in connection with the demolition of a party wall existing between the store buildings owned by the Metzgers and by Mary E. Arnold and Louise O. Hollinger which was under lease to the Friedmans.

The Metzger buildings were on lots 104 and 106 Dauphin Street, and the Arnold-Hollinger building was on lot 102 Dauphin Street. The property line ran through the center of the party wall.

The Metzgers were desirous of erecting a new building on their two lots. They entered into an agreement with Arnold and Hollinger to the effect that they would tear down the party wall and erect a new wall entirely on their property and tie the Arnold-Hollinger building into this new wall. This would involve erecting a temporary wall to the Arnold-Hollinger building which would cause an intrusion into the Friedman store of some 18 inches. This agreement, however, was subject to the Friedmans agreeing thereto. After many conferences the Friedmans were adamant in their refusal to concur in the agreement.

Metzgers began negotiations with J. F. Pate Contracting Company looking toward the demolition of their buildings and the party wall and the erection of the proposed new building. However, by a letter, and to induce Pate to enter into a contract for erection of the Metzgers' building, Metzgers removed from the Pate building contract the obligation to demolish their two buildings, as well as to remove the party wall, leaving only the erection of the new building to Pate.

Thereafter Metzgers entered into a contract with Freeman Wrecking Company for the demolition of the existing structures. Pate was not a party to this contract and was expressly excluded from any responsibility for this work. However, Pate was to provide any necessary shoring to protect the Arnold-Hollinger building.

. Freeman began tearing down the Metzgers buildings within three days prior to 26 February 1959.

At this time Metzgers had not obtained permission of the Friedmans to demolish the party wall, and according to Albert Metzger he had instructed Freeman not to touch the party wall but only to expose it. The Metzgers had discussed with their architect the possible condemnation of the wall because of its age (120 years), and because of the necessity of pile driving operations in the construction of the new building, though the later condemnation of the wall and the ordering of the Friedmans to vacate their building was unexpected.

Shaw Freeman of Freeman Wrecking Company testified that in his work of demolition, prior to the condemnation of the Arnold-Hollinger building, he did not touch any part of the party wall other than to expose it on the Metzgers' side. When he got the demolition work under way, Mr. Adams, the city building inspector told him to take the sheeting off the wall, and "hold the trucks." He stated that the exposed portion of the wall indicated it had deteriorated and was weak. He did not think the wall could have been braced so it could have withstood pile driving operations (on the Metzgers' lots), but it "may could have been so braced." He denied any of his men had trespassed on the Friedman property.

On cross-examination, Mr. Freeman testified that Pate was to take care of the shoring of the wall, which was not part of his contract. We note here that no necessity for shoring the wall developed as the condemnation of the wall removed such eventuality.

Howard Yeager who was a deputy building inspector for the city of Mobile in 1958–59, testified that plans for the new Metzger building were approved by the building inspector. As the old Metzger building was torn down and the party wall exposed, he and Mr. Adams, the building inspector would inspect the party wall. He did not know who requested these inspections, but it would have been the architect, the contractor, or someone demolishing the Metzger buildings. As more of the party wall was exposed, he and Mr. Adams determined that because of the condition of the brick, mortar, and age of the party wall that it could not stand the construction process of the Metzger building. Therefore, on 27 February 1959, they condemned the wall and the Arnold-Hollinger building, and ordered Friedman in writing to vacate the Arnold-Hollinger building immediately. That same day the Friedmans vacated their building, removing all their property and stock therefrom.

Mr. Yeager denied that anyone representing Metzgers, or the Arnold-Hollinger landlords, ever attempted to get the building inspection department to deliberately condemn the party wall.

Pate obtained a Comprehensive Liability Policy from Royal, and on 9 January 1959, additional endorsements were made to his policy.

The construction contract between Pate and Metzgers required Pate to take out insurance to cover its operations. Pate obtained such policy in the amount of one million dollars. Additional endorsements were added to this policy (Comprehensive Liability Policy No. RLG 05 65 37) on 9 January 1959.

Also, on 9 January 1959, Metzgers obtained a Manufacturers and Contractors Liability Policy from Royal in the amount of one million dollars. This policy was numbered RLM 23 84 01.

After the condemnation of the party wall, Metzgers, as agent for Arnold-Hollinger, on 2 March 1959, entered the Arnold-Hollinger building and removed the party wall and erected a temporary wall.

Such action was under the terms of the Arnold-Hollinger lease with Friedman which provided that the landlord could enter the building for the purpose of making necessary repairs.

Thereafter on 9 December 1959, the Friedmans filed a suit against Metzgers, Pate, et al., claiming that on 26 February 1959 (prior to the condemnation of the party wall and ordering the Friedmans out), Metzgers had committed a trespass on their leasehold interest in the building located at 102 Dauphin Street. The complaint as finally amended contained innumerable documentary exhibits. The complaint contained five counts. Four of the counts were for trespass quare clausum fregit, and one count charged conspiracy to commit such trespass.

By letter and within three days of service of the complaint, Metzgers or their attorney notified the agents who issued the policies of the claim against them by Friedman, forwarding with the letter the suit papers served on them.

By letter, Royal denied coverage or liability under any of the policies issued by them, and following this denial Metzgers filed a declaratory action seeking to establish their rights under Royal's policies. Demurrers were sustained to the bill of complaint as originally filed, and after several amendments to the bill of complaint, the Chancellor sustained Royal's demurrers to that aspect of the bill asserting liability under the Pate policy and dismissed that portion of the bill pertaining to the Pate policy.

The demurrers going to that portion of the bill relating to the policy issued to Metzgers were overruled.

The Friedman's suit pending on the law side was stayed pending the outcome of the declaratory action.

Metzgers appealed the ruling in the declaratory action dismissing Pate as a respondent. On 14 March 1963, this court affirmed the action of the Chancellor in this regard, with the observation that no bona fide justiciable controversy between Metzgers and Pate was presented, in that the documentary exhibits expressly negatived any duty on the part of Pate to defend Metzgers in the action at law, and further, that the date of the alleged tort, 26 February 1959, was at a time before Pate commenced its contract with Metzgers. See Metzger Brothers, Inc., et al., v. Royal Indemnity Co. et al., 274 Ala. 643, 151 So. 2d 244.

Thereafter Royal filed a petition for a writ of mandamus to compel the Circuit Court of Mobile County to dismiss the above mentioned Metzgers' suit pending on the law side. This court denied the petition for mandamus on the basis that at no time was any issue before the court in the appeal involved in Metzger Brothers et al. v. Royal Indemnity Co. et al., supra, other than whether the bill considered in that case stated a justiciable issue as to the respondent Pate, and Pate only. The court further observed that although the court was not convinced that mandamus was appropriate, an opinion was written for the guidance of the parties and to clarify the former opinion in 274 Ala. 643, 151 So.2d 244. See Ex parte Royal Indemnity Co., 279 Ala. 80, 181 So.2d 894 (1966).

The order theretofore issued on 20 April 1960, staying the proceedings in Friedmans et al. v. Metzgers et al., on the law side, was set aside on 12 June 1968, by agreement of the parties.

In October 1970, the trial on the law side of the case of Friedmans et al. v. Metzgers et al., was begun. As before mentioned, this suit was filed on 29 December 1959. The jury returned a general verdict finding only Metzgers to be liable and assessed damages at $133,000.00, and judgment was entered pursuant to the verdict. This judgment was affirmed by this

court on 30 December 1971. See Metzger Brothers, Inc. v. Friedman, 288 Ala. 386, 261 So.2d 398.

Following this, a hearing was had on the declaratory action, which was originally filed on 31 March 1960, for the purpose of determining the liability of Royal under two insurance policies issued by Royal to the Metzgers and to Pate. In the declaratory action the record in Metzger Brothers, Inc. v. Friedman, supra, consisting of 956 pages and 161 documentary exhibits, was introduced. This voluminous quantity of evidence, together with evidence and exhibits introduced in the hearing in the declaratory action has resulted in a massive record of some 2600 pages.

At the conclusion of the hearing on the declaratory action, the Chancellor entered a decree which reads as follows:

"This cause having come on to be heard before me on November 16 and 17, 1971, and having been submitted on the pleadings, testimony, evidence, briefs and argument of counsel, all as shown by note of evidence and order of submission entered on February 24, 1972, and on order of re-submission dated the 3 day of August, 1972.

"The Court having fully considered same, finds as follows:

"A. The Complainants in this cause contended, and this cause was tried, on the theory that Royal Indemnity Company, hereinafter referred to as Respondent, was liable to Complainants under and by virtue of Respondent's Owners Protective Liability Insurance Policy designated Manufacturers' and Contractors' Liability Policy No. RLM 238401, for damages sought and recovered in Case No. 1853 in the Circuit Court of Mobile County, Alabama by Sanuel A. Friedman and Lowell Friedman, as well as the costs and expenses in defending said suit.

"B. The Respondent issued and delivered to the Complainants, its Manufactur-ers' and Contractors' Liability Policy No. RLM 238401, duly countersigned by its duly authorized and licensed agent in Mobile, Alabama, under date of January 9, 1959, which said policy was in full force and effect at all times material hereto.

"C. The premiums for said policy were paid, and credit was extended by the Respondent to Complainants for certain coverages which were included within the policy. The Court further finds that when Respondent was notified of said suit and called upon to defend it, Respondent denied liability on eight specified grounds, none of which had anything to do with non-payment of premiums or lack of consideration. The Court further finds that the non-payment of premiums, or lack of consideration, was not denied by plea as required by Code of Alabama, Title 7, § 374. The Court finds that there was a valid consideration running to the Respondent from the Complainants for the issuance of said policy and for each of the coverages contained therein.

"D. The claim of the Friedmans in Case No. 1853 resulted from 'an occurrence' within the meaning and terms of the policy of insurance referred to in 'B.'

"E. The Complainants gave notice of the 'occurrence' to the Respondent as soon as practicable.

"F. The 'occurrence' was not intentionally caused by the Complainants.

"G. The Respondent's denial that it had been notified of an 'accident' caused the Complainants trouble and expense and such action by it waived condition No. 9 requiring written notice of 'an occurrence.'

"H. The eight specified grounds of denial of liability contained in Mr. Foreman's [counsel for Royal] letter of March 8, are either without merit or the Respondent failed to introduce sufficient facts to prove them.

"I. The Court finds that the Respondent is liable to Complainants under said Policy No. RLM 238401. It is unnecessary, therefore, for it to make any declaration of rights under Respondent's Policy No. RLG 05–65–37.

"J. The Court takes judicial knowledge of the final determination of the Friedman vs. Metzger lawsuit during the pendency of this action, and of the opinion of the Supreme Court of Alabama published in connection therewith. It finds that the outcome of the case determined the liabilities of the Complainants to the Friedmans.

"NOW, THEREFORE, IT IS CONSIDERED, ORDERED ADJUDGED AND DECREED:

"(1) The Complainants are entitled to the relief prayed for under Respondent's Policy No. RLM 238401.

"(2) The Respondent owed a duty under said policy to defend Complainants in the case of Samuel A. Friedman and Lowell Friedman vs. Complainants and others, same being Law Case No. 1853, on the docket of the Circuit Court of Mobile County, Alabama, Law side, and the Respondent is ordered to pay the amount of the judgment against Complainant, Metzger's Inc., rendered in said Law Case No. 1853, and all interest and penalties thereon, and the Respondent is ordered to pay all expenses, including reasonable attorneys fees, incurred by Complainants in the defense of said suit, including the appeal to the Supreme Court of Alabama, and to pay all costs taxed against Complainants in said suit and the interest thereon.

"(3) The Register of this Court Honorable W. Elsworth Haughton, is ordered to forthwith set a time and place for the holding of a reference, give reasonable notice thereof to the parties hereto, and at said reference to receive evidence, hear testimony and find the amount the Complainants paid in connection with Law Case No. 1853, including all court costs, interest, bond premiums, and expenses, including attorneys fees incurred in defending same both in this Court and in the Supreme Court of Alabama.

"He is ordered to report his findings to this Court for further order or judgment in accordance therewith; the Court retains jurisdiction of this matter until the report of said Register is made to this Court, and the Court renders its final judgment, fixing the amounts due to Complainants from Respondent herein.

"(4) Upon entry of the final judgment herein, fixing the amounts due to Complainants, from Respondent, court costs are then to be taxed against Respondent and execution issued thereon.

"Done this the 5 day of September, 1972.

"/s/Elwood L. Hogan,
CIRCUIT JUDGE"

Thereafter, it being shown to the court by motion to modify the decree that Mr. Haughton, the Register, had suffered a heart attack and was physically unable to hold the reference as ordered, the decree was modified and amended by providing that the reference be held by the Register, or by the Deputy Register.

After due notice, reference hearing was conducted by Ben F. Welborn, Deputy Register, who, on 10 November 1972, made his report to the Chancellor. The Deputy Register found that the Metzgers had paid the judgment entered in the case of Friedman v. Metzger (Law Case No. 1853), in the amount of $133,000.00, plus the penalty of $13,300.00, interest in the amount of $12,479.81, and court costs of $574.62, making a total of $159,354.43. The Deputy Register further found that the Metzgers had paid the Court Reporter $1,364.00, insurance premiums of $1,751.00 on the lives of Leonard and Albert Metzger in order to obtain a loan of $150,000.00 from a bank with which to pay the judgment in the Friedman suit, and $13,446.67 fees paid to Howell, Johnston, and Langford, for handling the appeal only in the Friedman case, plus expenses of $181.02 paid said

attorneys in connection with the appeal. The amounts totaled $16,742.69.

In addition the Deputy Register found that the Metzgers had agreed to pay the firm of Holberg and Tully, the sum of $15,000.00 for defending the Friedman suit in the trial in the Circuit Court. The Deputy Register also found that interest in the amount of $9,356.95 was due through 30 September 1972.

Altogether the Deputy Register found there was a total of $200,454.07. No exceptions were taken to the Register's report.

On 4 December 1972, the Chancellor entered a decree ratifying, approving, and confirming the report of the Deputy Register, and further found and decreed that additional interest in the amount of $2,611.70 had accrued since the Deputy Register's report.

The Chancellor decreed that the complainants (Metzgers) should have and recover from the respondent (Royal) the sum of $203,065.77, for which sum judgment was awarded. Costs were taxed against the respondent.

Appellant has essentially argued two points which may be generalized as, (1) the Chancellor erred in overruling Royal's demurrer to the bill as amended, and (2) the Chancellor erred in decreeing that Royal was liable to the Metzgers under its policy No. RLM 238401. Several of the arguments are overlapping. In many instances a single point is argued from various and varied angles. If an attempt were made to answer seriatim the various and varied contentions of appellant, our opinion would of necessity stretch to an intolerable length. We will, therefore, confine our discussion to those points we consider material to decision in this appeal.

As a threshold question the appellant contends that the court erred in overruling its demurrer to the bill on those grounds asserting that no justiciable issue was shown by the complaint as amended.

In the course of his argument under assignment 1, counsel for appellant states:

"The allegation on page 54 of the Transcript is nothing more than 'Complainants allege further that a justiciable controversy exists between the Complainants and Respondents * * *' The question as to whether this allegation is [a] conclusion of the pleader can best be determined by giving consideration to other grounds of demurrer pertaining to the contractual provisions of the Metzger-Pate contract, limitations of coverage, breaches of conditions, and violations of Section 6, Title 28, Code of Alabama Recomp."

An examination of the bill as amended shows that it states among other things, a rather complete history of the transactions between the Metzgers and Arnold and Hollinger in reference to the demolition of the party wall, the construction contracts between Pate and the Metzgers, the issuance of the Pate-Royal and the Metzger-Royal policies, certain provisions of the policies, the bringing of the suit by the Friedmans, the notification of Royal of the Friedman suit, and the denial of coverage by Royal.

The prayer of the bill prays, among other things, that the court enter a final decree construing the Manufacturers and Contractors Liability Policy No. RLM 238401, issued by Royal to Metzgers and construe the same to the effect that such policy requires Royal to cover the legal liability of the Metzgers, if any, arising out of the suit by the Friedmans against the Metzgers.

Attached to the complaint and made a part thereof are numerous documentary exhibits, including the two policies issued by Royal to Pate, and by Royal to Metzgers, various construction contracts, correspondence between the various parties and their attorneys, etc. These documentary exhibits cover some 170 pages of transcript.

A demurrer is rarely appropriate in a declaratory proceeding. Curjel v. Ash, 261 Ala. 42, 72 So.2d 732. Rather, evidence should be heard and final decree rendered thereon even though petitioners' bill is not explicit about the precise theory of relief. Glens Falls Indemnity Co. v. Boutwell, 274 Ala. 258, 147 So.2d 476. To this same effect see also, Tillman v. Sibbles et al., 292 Ala. 355, 294 So.2d 436; Auto-Owners Ins. Co. v. Stokes, 284 Ala. 537, 226 So.2d 320; Hogan v. City of Huntsville, 288 Ala. 595, 264 So.2d 155.

We think the bill as amended, together with the exhibits attached thereto and made a part thereof, stated the substance of a bona fide justiciable issue which was due to be settled by a declaration of the complainants' rights. Ellison v. Canal Ins. Co., 264 Ala. 24, 84 So.2d 642.

Appellants further argue as to grounds 10–13, and 63–64 of its demurrers that Endorsement 4 of the Royal-Metzger policy, together with Endorsements 11 and 12 of the Royal-Pate policy, stipulate that the coverage in both policies is extended only in connection with operations performed by Pate under a contract with Metzgers and Pate in connection with property located at 104–106 Dauphin Street.

Since Pate was eliminated from the declaratory action by the dismissal of Pate therefrom, we cannot see that the Royal-Pate policy can be influential in construing the Royal-Metzger policy. In fact it is to be noted that the Chancellor specifically stated in paragraph A of his decree that the cause was tried on the theory that Royal was liable to the Metzgers under and by virtue of Royal's policy designated as Manufacturers and Contractors Liability Policy No. RLM 238401, issued on 9 January 1958. We, therefore, now look at those provisions of the Royal-Metzger policy.

Under the "Insuring Agreements, Coverage B" Royal agreed to pay in behalf of the insured all sums which the insured (Metzgers) shall become obligated to pay as damages because of injuries or destruction to property, including the use thereof, caused by accident and arising out of the hazards as defined in the policy.

Among the definitions of "Hazards," Division 3, entitled "Independent Contractors" the policy sets forth:

"Operations performed by the named insured by independent contractors and general supervision thereof by the named insured, if the accident occurs in the course of such operations, other than * * * structural operations at such premises which do not involve changing the size of or moving buildings or other structures."

We note here that the demolition of the Metzger buildings and rebuilding another structure would necessarily involve changing the size of, or moving (removing) a building.

Attached to the policy at the time of its issuance were six endorsements which qualified and amended the policy.

Endorsement No. 1 was a nuclear liability exclusion provision, which is not here applicable.

Endorsement No. 2 amends the policy to change the phrase "caused by accident" to "caused by occurrence" wherein the phrase "caused by accident" appears in the policy. Also, in Endorsement No. 2 "occurrence" is defined as follows:

" 'Occurrence' means an event, or continuous or repeated exposure to conditions, which unexpectedly causes bodily injury, sickness or disease, including death at any time resulting therefrom, or injury to or destruction of property, including loss of use thereof, during the policy period. Any number of bodily injuries or deaths, or cases of sickness or disease resulting from a common cause or from exposure to substantially the same general conditions shall be deemed to result from an occurrence, and any

number of injuries to or destruction of property, including loss of use thereof, resulting from a common cause or from exposure to substantially the same general conditions shall be deemed to result from one occurrence."

Endorsement No. 3 is a broad form policy damage coverage.

Endorsement No. 4 is headed "LIMITATION OF POLICY TO DESIGNATED LOCATION." The pertinent portions of this endorsement read:

"It is agreed that the policy applies only to the premises designated below, and operations necessary and incidental thereto.

"Location of Premises: OPERATIONS PERFORMED UNDER A CONTRACT WITH THE INSURED BY J. F. PATE CONSTRUCTION CO. IN CONNECTION WITH DEMOLITION AND CONSTRUCTION WORK 104–06 DAUPHIN STREET, MOBILE, ALABAMA."

Endorsement No. 5 merely changes the names of the insured, as do later endorsements 7, 8, and 9. None of these endorsements (5, 7, 8, and 9) are material to this review.

Endorsement No. 6 is entitled "ITEM AMENDMENT ENDORSEMENT." Among other things, it shows that the estimated premium for the classification of Item 4 of the policy is amended to include "(Division 3)." In the boxes on this endorsement appears the following:

Under the box headed "LOCATION OF WORK AND CLASSIFICATION OF OPERATIONS" appears:

"(3) INDEPENDENT CONTRACTORS

"BUILDING WRECKING OPERATIONS–#0524

OWNER

(MASONRY CONSTRUCTION)

"MINIMUM PREMIUMS–PER BUILDING:

B.1 3.34; P.D. 1.90

"MINIMUM PREMIUMS–PER POLICY:

B.1 33.40; P.D. 28.50"

Under the box headed "Estimated Renumeration" appears "AREA" "TO BE DETERMINED"

Under the box headed "Rate Per $100 of Renumeration" appears the words and figures:

"PER 100 SQ. FT. OF AREA
B.1. P.D. .0722

In the remaining box, headed "Estimated Premium," there appears:

"B.1. P.D. TO BE DETERMINED."

It is the contention of the appellant that Endorsement No. 4, above mentioned, qualifies and limits Endorsement No. 6 with the result that only independent contractors of J. F. Pate Construction Company are within the coverage of the policy. We do not agree.

Endorsement No. 4 is headed "Limitation of Policy to Designated Location." Endorsement No. 4 states that the Royal-Metzger policy applied only to the 104–06 Dauphin Street, "and operations necessary or incidental thereto." Under "Location of Premises," Endorsement No. 4 sets forth:

"Operations performed under a contract with the insured by J. F. Pate Construction Co. in connection with demolition and construction work, 104–06 Dauphin Street, Mobile, Alabama."

At the time the policy was written, Pate was to do the demolition work as well as the construction of the new building. Although Pate was later by contract relieved of the demolition work, the duty yet remained on Pate to shore the wall during the demolition. No such duty arose, however, since the wall was condemned thus

obviating any necessity for any shoring. It would appear that Endorsement No. 4 applies to the *location* of the place where the coverage applies.

Endorsement No. 6 states the classification of Item No. 4 (Endorsement No. 4) is amended to include Independent Contractors (Masonry Construction). A premium to be determined was charged for this amendment. Nowhere in Endorsement No. 6 is there any indication that it is to apply only to independent contractors of Pate. Metzgers, and not Pate, was the named insured.

■ Metzgers contends that the Metzger-Royal policy was to obtain extra coverage additional to the Royal-Pate policy. We find nothing in Endorsement Nos. 4 and 6 tying the Royal-Metzger policy to the Royal-Pate policy. At most it might be argued that an ambiguity may be created by the terms of Endorsement No. 4 as read with Endorsement No. 6 of the Royal-Metzger policy. This being so, the Royal-Metzger policy, with all its amendments, must be construed most strongly against the insurer, and liberally in favor of the insured. Safeco Ins. Co. of America v. Banks et al., 275 Ala. 119, 152 So.2d 666; Trans-Continental Mutual Ins. Co. v. Harrison, 262 Ala. 373, 78 So.2d 917.

■ Appellant under Assignment of Error No. 13 argues that the court erred in decreeing that the Metzgers were entitled to the relief prayed for under their policy in that there was no proof that the premium for demolition coverage was determined or paid. Endorsement No. 6, of course, shows that the estimated premium was "to be determined." There is no dispute that the policy was delivered to Metzgers.

As stated in 44 Am.Jur.2d Insurance, Sec. 1958, at page 897:

"There is likewise authority to the effect that where the policy is delivered without requiring payment of the premium, the presumption is that a credit was intended, and the policy is valid."

Our case of Commercial Casualty Ins. Co. v. Lloyd, 243 Ala. 416, 10 So.2d 292, appears in accord with the above stated principle.

Further, there was no plea impeaching the written policy on the ground of insufficient consideration, as required by Section 374, Title 7, Code of Alabama 1940. This omission was noted by the Chancellor in his decree.

Even had such plea been filed, the policy being delivered, the presumption is that credit was intended, and the policy is valid. Section 374, above mentioned.

Albert Metzger testified that Metzgers had paid all premiums due on the Royal-Metzger policy.

The agent for Royal testified that Royal was paid the premiums on the policy by Pate, but no premium was paid for coverage under Endorsement No. 6. On cross-examination the agent testified that he did not know whether or not Metzgers had paid Pate the amount paid on the policy. However, this testimony must be read in light of the statement of counsel for appellant made to the court that audits are not made until a policy is a year old.

Clearly, under the terms of Endorsement No. 6, the premiums were to be determined. Until this determination by the insurer is made, it must be deemed that there was an agreement by Metzger to pay the premium, and an extension of credit by Royal for the premium pending the determination by the insurer of the amount due. We find no merit in Assignment of Error No. 13.

■ Appellant also contends that notice as required by Paragraph 9 of the policy under "Conditions" was not given to Royal. Paragraph 9 provides that when an accident [occurrence] occurs, written notice shall be given on behalf of the insured to the company as soon as practicable. Such

notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place, and circumstances of the accident [occurrence], the name and address of the injured and available witnesses.

It must be remembered that the Friedmans' suit was for a trespass allegedly occurring on 26 February 1959, prior to the condemnation of the party wall. Negotiations between the Friedmans and the Metzgers had been carried on for some time in reference to demolition of the party wall. No agreement had been reached. Albert Metzger testified that he had instructed Shaw Freeman to start on his work on the Metzgers' side and not to touch any structural part of the wall, but only to expose the wall. Shaw Freeman also testified that prior to the condemnation he had not touched any part of the party wall, and had not removed any of the support of the wall, and had only exposed the wall from the Metzgers' side.

The evidence presented by the Metzgers was to the effect that they were unaware of any alleged trespass to the Friedmans' leasehold property on 26 February 1959, or prior thereto. Their entry into the Friedman store had been after the condemnation of the store, and then they entered as agents of Arnold-Hollinger and under the authority of the lease between Arnold-Hollinger and the Friedmans.

The evidence of the Metzgers was to the effect that they first became aware of the alleged trespass occurring on or prior to 26 February 1959, when the Friedmans' complaint was served upon them on 15 December 1959.

By letter, Royal was notified of the Friedmans' claim on the Metzgers and the suit papers were forwarded to Royal with the letter. These documents were received by Royal on 18 December 1959, that is, three days after service of the complaint on Metzgers.

Under these circumstances it is our conclusion that the Chancellor properly held that notice of the occurrence forming the basis of the Friedmans' suit was given to Royal as soon as practicable. See Pan American Fire & Casualty Co. v. DeKalb-Cherokee Counties Gas Dist., 289 Ala. 206, 266 So.2d 763, in which it was held that notice of a claim given eleven months after the accident, was given as soon as practicable where knowledge of the claim was first acquired upon filing of the suit.

As before stated, Endorsement No. 6 of the Royal-Metzger policy provides that the classification and location of the work is to be that indicated in Endorsement No. 4 of the Royal-Metzger policy, and pertains to Independent Contractors. Endorsement No. 4 concerns the demolition and construction work to be performed by J. F. Pate Construction Company at 104–106 Dauphin Street. Thus, Endorsement No. 6 is limited to demolition and construction work at said location and to "operations necessary and incidental thereto."

■ A coverage in an insurance policy which includes "necessary and incidental operations thereto" covers all operations necessary and incidental to the declared use of the premises designated. Couch on Insurance, Second Ed., Section 44:301, at p. 716. The declared use of 104–106 Dauphin Street for the purposes of the policy here considered was the demolition of the old buildings on said lots, and the construction of a new building.

■ Where in the course of performing work covered under a policy of insurance, an injury results to adjoining property, which is unexpected, such event is covered under an accident or "occurrence" policy. Minkov v. Reliance Ins. Co. of Philadelphia, 54 N.J.Super. 509, 149 A.2d 260.

Other points are argued by appellant. After due consideration, we are not convinced that merit attaches to these points.

On many issues of fact the evidence was in conflict. We must indulge every presumption in favor of the conclusions of the trier of fact, and his findings will not be disturbed unless palpably wrong. From our consideration of all the evidence, it is our conclusion that the evidence presented by the Metzgers, if believed to the required degree, was sufficient to support the decree rendered. Nor would we be justified in holding that the findings of the trier of fact were unreasonable or palpably wrong.

Affirmed.

MERRILL, MADDOX, McCALL and FAULKNER, JJ., concur.